David H. Bernstein (DB 9564)
S. Zev Parnass (SP 3284)
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
(212) 909-6696 (telephone)
(212) 521-7696 (facsimile)

*Attorneys for Plaintiff Energy Brands Inc. d/b/a Glacéau*

ELECTRONICALLY FILED

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| ENERGY BRANDS INC. d/b/a GLACÉAU, | : |
| | : |
| Plaintiff, | : |
| | : 07 Civ. 10644 (LTS) |
| v. | : |
| | : **COMPLAINT AND DEMAND** |
| SPIRITUAL BRANDS, INC. and ELICKO | : **FOR JURY TRIAL** |
| TAIEB, | : |
| | : |
| Defendants. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Energy Brands Inc. d/b/a Glacéau ("Glacéau"), by its attorneys, Debevoise & Plimpton LLP, for its complaint, alleges as follows:

## NATURE OF THE ACTION

1.   This is an action for trade dress infringement, false designation of origin, trade dress dilution, deceptive acts and practices, and unfair competition arising out of the recent launch of a new purified bottled water product, **spiritual**water, by Spiritual Brands, Inc. ("Spiritual Brands") and its principal Elicko Taieb ("Taieb" or "Mr. Taieb") (collectively, "Defendants").

2.   Within the last several weeks, Defendants have embarked on an unlawful campaign to lure consumers into purchasing **spiritual**water in the mistaken belief that it comes from, is sponsored or licensed by, or is associated or affiliated with, the

**smart**water brand, Glacéau's well-known electrolyte-enhanced water product.  The lynchpin of Defendants' campaign is the packaging of the **spiritual**water product, which mimics several key elements of the well-known and distinctive **smart**water trade dress.

3. As shown in the below pictures, the trade dress for **spiritual**water mimics so many key elements of the unique, distinctive **smart**water trade dress that it cannot be the result of sheer coincidence.

 

The similarities include: (i) a similarly-shaped, tall, narrow, cylindrical clear plastic bottle; (ii) a similar vertical presentation of the brand name; (iii) the brand name written in lower case letters with the first word in bold letters and the word "water" in non-emphasized letters; and (iv) a clear/white (light) cap.

4. Furthermore, four of the five names Defendants selected for **spiritual**water's different SKUs -- "Balance," "Defense," "Focus" and "Formula J'" -- are virtually identical to some of Glacéau's most popular flavors of **vitamin**water

(Glacéau's other principal product):  "Balance," "Defense," "Focus" and "Formula 50."  Defendants also have announced that additional flavors, such as "Power," "Essential," "Energy" and "Refresh," will be sold beginning on December 3, 2007.  These SKUs, too, are virtually identical to some of Glacéau's most popular flavors of **vitamin**water: "Power-C," "Essential," "Energy" and "Revive."

      5.      Although the religious imagery on some **spiritual**water bottles shown on Defendants' website, www.spiritualh2o.com (see the adjacent image), is different from the cloud imagery on **smart**water bottles, consumers seeing the line of **spiritual**water products will, because of the similar trade dress and product names, mistakenly believe that it comes from, is sponsored or licensed by, or is associated or affiliated with, Glacéau, the producer of **smart**water.  That confusion is exacerbated by the advertising for **spiritual**water on Defendants' website, business card and promotional calendar, which feature the **spiritual**water name on the bottle without any imagery, as shown below (juxtaposed next to a bottle of **smart**water) and in the attached Exhibits A-C.




6.      Defendants' unlawful conduct is causing and will continue to cause serious and irreparable harm to Glacéau. This conduct, if not enjoined, will eviscerate the goodwill Glacéau has spent more than ten years carefully cultivating for its **smart**water brand.

## THE PARTIES

7.      Glacéau is a corporation organized and existing under the laws of the State of New York with its principal place of business located at 17-20 Whitestone Expressway, Whitestone, New York 11357.

8.      Upon information and belief, Defendant Spiritual Brands is a corporation organized and existing under the laws of the State of Florida with its principal place of business located at 4301 South Flamingo Road #103-204, Davie, Florida 33330.

9.      Upon information and belief, Defendant Taieb is a Florida domiciliary residing at 13191 NW 11th Court, Sunrise, Florida 33323.

4

## JURISDICTION AND VENUE

10. This Court has original jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332 and 1338 and has supplemental jurisdiction pursuant to 28 U.S.C. § 1367. The amount in controversy is in excess of $75,000, exclusive of interest and costs.

11. This Court has personal jurisdiction over Defendants pursuant to N.Y. Civ. Prac. L. & R. §§ 301 & 302(a). Upon information and belief, Defendants regularly have solicited business in the State of New York and in this District via the Internet, have transacted and done business in the State of New York and in this District, have wrongfully caused injury to Glacéau in the State of New York and in this District, such injury being reasonably foreseeable, and derive substantial revenue from interstate commerce.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this action occurred in this District. Venue over Defendant Spiritual Brands also is proper in this District pursuant to 28 U.S.C. § 1391(c) because it is deemed to reside in this District.

## SMARTWATER AND ITS TRADE DRESS

13. Glacéau pioneered the enhanced water category when it launched the **smart**water brand in 1996, a high-quality, vapor-distilled bottled water enhanced with electrolytes, with a unique and distinctive packaging that would make it distinguishable from the sea of typical bottled waters.

14. In just over ten years, the **smart**water brand has achieved critical renown, including in the industry, the press, and among consumers. It also has enjoyed a

consistently high level of commercial success. Notwithstanding the addition of other competitors in this category, the **smart**water brand remains the recognized leader in the electrolyte-enhanced bottled water category.

15. The trade dress of **smart**water is one of the most important ways in which consumers identify the brand on the shelf or in the hands of celebrities and other consumers, and it thus is among Glacéau's most valuable intellectual property rights. To create a distinctive look for the product, Glacéau enlisted the assistance of a designer named Douglas Lloyd, who was well-known for work he had done with, among others, Gucci and The Gap. Together, Lloyd and Glacéau created a unique packaging for the **smart**water product. In January 2006, Glacéau slightly refreshed the trade dress to update the packaging while still maintaining the same overall visual impression and preserving all of the core brand-identifying elements.

16. **smart**water's success has been based largely on its trade dress and the clean, bold, modern image that the trade dress conveys.

17. The key elements of this distinctive trade dress include: (i) a bullet-shaped, tall, narrow, cylindrical clear plastic bottle; (ii) a vertical presentation of the brand name; (iii) the brand name written in lower case letters with the first word in bold letters and the word "water" in non-emphasized letters; and (iv) a clear (light) cap.

18. The **smart**water trade dress has received unsolicited, positive attention from the popular and industry media. For example:

- The February 1, 2000 issue of *Beverage Industry* noted that the package design is "one of the biggest assets" of **smart**water products (as well as other Glacéau products).

- The November 13, 2000 issue of *BRANDWEEK* described the **smart**water packaging as "striking."

- The July 1, 2003 cover story in *Beverage Industry* magazine praised the **smart**water trade dress for its "catchy labels with minimalist colors."

- On April 18, 2006, the *Gourmet Retailer* website posted an entry which noted **smart**water's "slender silhouette" and praised its "fresh look, and arresting on-shelf presence."

19. The **smart**water bottle label is registered on the Principal Register of the United States Patent and Trademark Office under Registration No. 2,840,063 (under GLACÉAU SMARTWATER and Design). *See* Exhibit D.

### SMARTWATER'S ADVERTISING AND MARKETING

20. Glacéau's "grassroots" marketing strategy for the **smart**water brand trades heavily off of the distinctive and recognizable **smart**water trade dress.

21. As part of this grassroots marketing approach, Glacéau has invested in events marketing, including at such desirable venues as the 2006 Daytime Emmy Awards, the 2006 Sundance Film Festival, the 2005 Revlon Run Walk and the 2005 MTV Video Music Awards. Glacéau also makes **smart**water products available at smaller, targeted events such as local road races or art gallery openings. In addition, Glacéau invests in product placements for **smart**water in television shows such as *CSI*, *Scrubs*, *Grey's Anatomy* and *The Today Show*.

22. **smart**water products are often sold using point of sale devices, such as individualized display cases or coolers. All of the point of sale materials include elements designed to be evocative of the **smart**water trade dress. In addition to point of sale materials, Glacéau has a substantial print advertising campaign which prominently features the **smart**water trade dress. The **smart**water trade dress also appears on

7

Glacéau's Fleet Graphics delivery trucks, approximately 300 of which are on the road each day.

23. All of these strategies work only if consumers later recognize **smart**water products when they go to a store to purchase them or when they describe the products to others. The nature of the trade dress supports these strategies because, even from far away, the product is recognizable from its distinctive trade dress as a **smart**water product.

24. For example, shortly after Apple's CEO Steve Jobs delivered a keynote address while drinking **smart**water, a blogger on the Mac website *MacRumors: Forum* inquired as to what was the "pretty distinctive brand of water" that Mr. Jobs was drinking. A number of bloggers responded that it was **smart**water, which prompted discussion about the product and where they could get it. One person even responded "Its hard to imagine a more industrial design water bottle than that … I think next time I see it ill [sic] pick it up, and tell everyone im [sic] drinking the water steve jobs uses." *See* <http://forums.macrumors.com/showthread.php?t=176903>.

25. In 2006, Glacéau spent nearly $2.4 million advertising and promoting the **smart**water brand.

26. In 2007, Glacéau launched a major advertising campaign for **smart**water featuring the film and television star Jennifer Aniston. This is the largest **smart**water ad campaign in Glacéau's history, costing over $13.1 million.

27. Glacéau also recently signed New England Patriots quarterback Tom Brady to endorse the **smart**water brand in a campaign that will consist of print, outdoor, Internet and television advertisements and cost an estimated $5 million.

**SALES OF SMARTWATER**

28.     **smart**water beverages have enjoyed exponential sales growth since their introduction in 1996.  In 2006 alone, Glacéau's retail revenues from **smart**water beverages exceeded $75.6 million, representing the sale of nearly 56 million bottles.  In 2007, Glacéau expects revenues of more than $149 million from sales of more than 111 million bottles.

**DEFENDANTS' BAD FAITH**

29.     Defendants' bad faith in developing the **spiritual**water trade dress is evident both from an examination of Defendants' business practices and the trade dress used on third parties' water products.

30.     Upon information and belief, Defendant Taieb operates or is affiliated with numerous pornographic websites and businesses.  One of these businesses, Movixo, Inc. d/b/a movixo.com ("Movixo"), apparently rents pirated, low-quality copies of pornographic videos.  Zero Tolerance Entertainment filed a multi-million dollar lawsuit against Movixo in 2006 alleging copyright and trademark infringement.

31.     Glacéau cannot tolerate the potential tarnishment that could attach if **spiritual**water products are confused with **smart**water, and if consumers were to link these brands with Mr. Taieb's pornographic businesses.  Moreover, the fact that Mr. Taieb has been involved in trademark disputes in the past suggests that he is well familiar with trademark protection and infringement, and thus that he adopted the trade dress for the **spiritual**water product, and the product names for its different SKUs, in bad faith.

32.     Defendants' conduct is all the more culpable when measured against other entries in the bottled water category.  A survey of the trade dress used by these other

bottled water products shows the many, virtually limitless options available to companies that wish to enter this market:



33.     Thus, the similarity of **spiritual**water's trade dress to the **smart**water trade dress is all the more striking when viewed in light of this range of designs for other products in the category.

## LIKELIHOOD OF CONFUSION

34.     Given the striking similarity between the products' respective trade dresses, there is a high likelihood that consumers and retailers will buy the **spiritual**water product under the mistaken belief that it comes from, is sponsored or licensed by, or is associated or affiliated with, Glacéau, the makers of **smart**water.

35.     This likelihood of confusion is further exacerbated by the fact that bottled water is a relatively low-cost item (less than $2 per bottle).  Accordingly, consumers are unlikely to exercise a great deal of care before making a purchase.  Moreover, a recent article quoted Mr. Taieb as stating that **spiritual**water soon will be available in stores (it already is available on Defendants' website).  In that regard, bottled water is often an

10

impulse purchase and is placed in coolers near a store's checkout counter or at the end of aisles in grocery stores.

## IRREPARABLE HARM

36. In developing and marketing its **spiritual**water product, Defendants have gone beyond fair competition and have adopted a trade dress that is likely to confuse consumers into thinking they are buying a product that comes from, is sponsored or licensed by, or is associated or affiliated with, Glacéau, the makers of **smart**water.

37. As a result of Defendants' conduct, Glacéau will suffer irreparable harm. It may lose sales and revenues, as customers may mistakenly believe that **spiritual**water is Glacéau's foray into the religious realm, and may choose to buy this "special edition" of **smart**water in lieu of **smart**water itself. Of even more concern is that other consumers may be offended by the religious messages and may abandon the Glacéau brand in its entirety. And, even worse, if Mr. Taieb's **spiritual**water business is publicly linked with his other business of pirating pornographic movies, the obvious hypocrisy involved may forever taint **smart**water, causing harm from which the brand might never recover.

## GLACÉAU'S EFFORTS TO RESOLVE THIS DISPUTE

38. Immediately upon learning of Defendants' conduct, Glacéau's outside counsel wrote a letter to Defendants objecting to the trade dress of its **spiritual**water product. A copy of this October 31, 2007 letter is attached as Exhibit E.

39. Defendants did not responded to that letter. Accordingly, on November 7, 2007, Glacéau's outside counsel sent another letter to Defendants, demanding a response within five days. *See* Exhibit F.

40. In response, on November 15, counsel for Defendants sent a letter (dated November 13) stating that Defendants "may agree to undertake appropriate and necessary measures to ensure agreed compliance with [Glacéau's] request to effectuate the required changes in any promotional marketing," but refused to change the bottle's trade dress. *See* Exhibit G. Accordingly, this action was initiated.

### COUNT I: TRADE DRESS INFRINGEMENT AND FALSE DESIGNATION OF ORIGIN UNDER SECTION 43(a) OF THE LANHAM ACT

41. Glacéau repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

42. The trade dress of **smart**water is used in commerce, is non-functional, is inherently distinctive, and has acquired substantial secondary meaning in the marketplace.

43. **spiritual**water, which is now being used in commerce, features a trade dress that is confusingly similar to the trade dress of **smart**water. Defendants' manufacture, distribution, sale and promotion of **spiritual**water thus is likely to cause confusion and mistake and to deceive retailers and consumers as to the source, origin or sponsorship of their products. Consumers seeing **spiritual**water in the marketplace likely will believe that it comes from, is sponsored or licensed by, or is associated or affiliated with, **smart**water.

44. Defendants' acts of trade dress infringement and false designation of origin, unless restrained, will cause great and irreparable injury to Glacéau and to the business and goodwill represented by the **smart**water trade dress, in an amount that cannot be ascertained at this time, leaving Glacéau with no adequate remedy at law.

45. Defendants' deceptive marketing and sales practices in connection with **spiritual**water in its present packaging constitutes infringement of the **smart**water trade dress and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

46. By reason of the foregoing, Glacéau is entitled to injunctive relief against Defendants, restraining them from any further acts of trade dress infringement and false designation of origin and, after trial, recovery of any damages (to the extent calculable) proven to have been caused by reason of Defendants' aforesaid acts.

**COUNT II: TRADE DRESS DILUTION
UNDER NEW YORK STATUTORY LAW**

47. Glacéau repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

48. The trade dress of **smart**water is used in commerce, is non-functional, is inherently distinctive, and has acquired substantial secondary meaning in the marketplace.

49. Defendants' manufacture, distribution, sale and promotion of **spiritual**water is likely to dilute and detract from the distinctiveness of the **smart**water trade dress.

50. Defendants' acts of trade dress dilution, unless restrained, will cause great and irreparable injury to Glacéau and to the business and goodwill represented by the **smart**water trade dress, in an amount that cannot be ascertained at this time, leaving Glacéau with no adequate remedy at law.

51.     The acts of Defendants as described above constitute trade dress dilution in violation of N.Y. Gen. Bus. Law § 360-l.

## COUNT III: DECEPTIVE ACTS AND PRACTICES UNDER NEW YORK STATUTORY LAW

52.     Glacéau repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

53.     The acts of Defendants as described above constitute deceptive acts and practices in violation of N.Y. Gen. Bus. Law §§ 349-50.

## COUNT IV: UNFAIR COMPETITION UNDER NEW YORK COMMON LAW

54.     Glacéau repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

55.     The acts of Defendants as described above constitute unfair competition in violation of Glacéau's rights under New York State common law, as preserved by N.Y. Gen. Bus. Law § 360-o.

## PRAYER FOR RELIEF

WHEREFORE, Glacéau respectfully prays:

A.      That Defendants and all those acting in concert or participation with them (including, but not limited to, their officers, directors, agents, servants, wholesalers, distributors, retailers, employees, representatives, attorneys, subsidiaries, related companies, successors, assigns and contracting parties) be temporarily, preliminarily and then permanently enjoined and restrained from:

i.      manufacturing, distributing, shipping, advertising, marketing, promoting, selling or otherwise offering for sale **spiritual**water

        in its present trade dress or any other trade dress that is confusingly similar to that of **smart**water; and

        ii.    representing, by any means whatsoever, that any products manufactured, distributed, advertised, offered or sold by Defendants are Glacéau's products or vice versa, and from otherwise acting in a way likely to cause confusion, mistake or deception on the part of purchasers or consumers as to the origin or sponsorship of such products; and

        iii.    doing any other acts or things calculated or likely to cause confusion or mistake in the minds of the public or to lead purchasers or consumers into the belief that Defendants' products come from Glacéau or are somehow sponsored or licensed by, or associated or affiliated with, Glacéau or its products; and

        iv.    otherwise unfairly competing with Glacéau.

B.    That Defendants and those acting in concert or participation with them (including, but not limited to, their officers, directors, agents, servants, wholesalers, distributors, retailers, employees, representatives, attorneys, subsidiaries, related companies, successors, assigns and contracting parties) take affirmative steps to dispel such false impressions that heretofore have been created by the use of the **spiritual**water trade dress, including, but not limited to, recalling from any and all channels of distribution any and all infringing products and promotional materials.

C.    That Defendants account to Glacéau for their profits and any damages sustained by Glacéau, to the extent calculable, arising from the foregoing acts of

trade dress infringement, false designation of origin, trade dress dilution, deceptive acts and practices and unfair competition.

  D. That, in accordance with such accounting, Glacéau be awarded judgment for three times such profits or damages (whichever is greater), pursuant to 15 U.S.C. § 1117 and N.Y. Gen. Bus. Law § 349(h).

  E. That Glacéau be awarded its costs, including its reasonable attorneys' fees and disbursements in this action, pursuant to 15 U.S.C. § 1117 and N.Y. Gen. Bus. Law § 349(h).

  F. That Glacéau be awarded punitive damages pursuant to the law of the State of New York in view of Defendants' intentional and willful trade dress infringement and other conduct.

  G. That Defendants deliver up for destruction all infringing products in their possession or control and all means of making the same in accordance with 15 U.S.C. § 1118.

  H. That Defendants file with the Court and serve on counsel for Glacéau within thirty (30) days after entry of any injunction issued by the Court in this action, a sworn written statement pursuant to 15 U.S.C. § 1116(a) setting forth in detail the manner and form in which Defendants have complied with any injunction which the Court may enter in this action.

  I. That Glacéau have such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMAND**

Glacéau demands a trial by jury on all claims as to which a jury trial may be had.


Dated: November 28, 2007
       New York, New York

                                 DEBEVOISE & PLIMPTON LLP


                                 By: /s/ S. Zev Parnass
                                       David H. Bernstein (DB 9564)
                                       S. Zev Parnass (SP 3284)
                                 919 Third Avenue
                                 New York, New York 10022
                                 (212) 909-6696 (telephone)
                                 (212) 521-7696 (facsimile)

                                 *Attorneys for Plaintiff Energy Brands Inc.*
                                 *d/b/a Glacéau*