David H. Bernstein  ELECTRONICALLY FILED
(dhbernstein@debevoise.com)
S. Zev Parnass
(szparnass@debevoise.com)
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
(212) 909-6696 (telephone)
(212) 521-7696 (facsimile)

*Attorneys for Plaintiff Energy Brands Inc. d/b/a Glacéau*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
ENERGY BRANDS INC. d/b/a GLACÉAU,              :    07 Civ. 10644 (DC)
                                                :
                        Plaintiff,              :    ECF Case
                                                :
            v.                                  :
                                                :
SPIRITUAL BRANDS, INC. and ELICKO              :
TAIEB,                                          :
                                                :
                        Defendants.             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

<u>Table of Contents</u>

<u>Page</u>

BACKGROUND ........................................................................................................................1

FACTS AND PROCEDURAL POSTURE ...................................................................................3

ARGUMENT ................................................................................................................................4

    A.    Standard To Be Applied.................................................................................4

    B.    C.P.L.R. § 302(a)(1)—Personal Jurisdiction is Proper Based on Defendants' Sales of Infringing Goods in New York..................................6

    C.    C.P.L.R. § 302(a)(3)—Personal Jurisdiction also is Proper Based on Defendants' Tortious Activities Outside of New York which Have Caused Injury in New York. ....................................................................9

        1.    Trademark Infringement is Tortious Activity................................10

        2.    By Causing Confusion and Deception among Glacéau's Potential Customers, Defendants Have Caused Injury in New York ...........10

        3.    Defendants Reasonably Should Have Expected Their Infringing Conduct to Have Consequences in New York................................11

        4.    By Peddling Their Goods on a Nationwide Basis, Defendants Derive Substantial Revenue from Interstate Commerce................13

CONCLUSION..........................................................................................................................15

Plaintiff Energy Brands Inc. d/b/a Glacéau ("Glacéau") submits this memorandum of law in opposition to the motion to dismiss filed by defendants Spiritual Brands, Inc. ("Spiritual Brands") and its principal Elicko Taieb ("Taieb" or "Mr. Taieb") (collectively, "Defendants"). For the reasons set forth below, Defendants' motion should be denied in its entirety.

## BACKGROUND

This is an action by Glacéau, a New York-based company, for trade dress infringement, false designation of origin, trade dress dilution, deceptive acts and practices, and unfair competition arising out of the launch of a new purified bottled water product, **spiritual**water, by Defendants. Defendants embarked on an unlawful campaign to lure consumers—including consumers in New York—into purchasing **spiritual**water in the mistaken belief that it comes from, is sponsored or licensed by, or is associated or affiliated with, the **smart**water brand, Glacéau's well-known electrolyte-enhanced water product. The lynchpin of Defendants' campaign is the packaging of the **spiritual**water product, which mimics several key elements of the well-known and distinctive




**smart**water trade dress.  As shown in the pictures above (the image on the right is taken from Defendants' advertising for its **spiritual**water product), the trade dress for **spiritual**water mimics so many key elements of the unique, distinctive **smart**water trade dress that it cannot be the result of sheer coincidence.  Those similarities include: (i) a similarly-shaped, tall, narrow, cylindrical clear plastic bottle; (ii) a similar vertical presentation of the brand name; (iii) the brand name written in lower case letters; (iv) the brand name written with the first word in bold letters and the word "water" in non-emphasized letters; and (v) a light cap.  Furthermore, several of the names Defendants selected for **spiritual**water's different SKUs (Stock Keeping Units)—including "Balance," "Defense," "Focus," "Formula J'," "Power," "Essential," "Energy" and "Refresh"—are virtually identical to some of Glacéau's most popular flavors of **vitamin**water (Glacéau's other principal product):  "Balance," "Defense," "Focus," "Formula 50," "Power-C," "Essential," "Energy" and "Revive."  *See generally* Complaint ¶¶ 1-4.  Defendants even copied, verbatim, Glacéau's statement below the ingredients panel that the product is "made from scratch" for the company.

In an effort to defend themselves against Glacéau's trade dress claims, Defendants attempt to wrap themselves and their products in the cloak of religion.  *See* Complaint, Ex. G.  Not only is the purported religious nature of Defendants' products no defense, but also, it represents a disturbing hypocrisy given that defendant Taieb also operates and/or is affiliated with numerous pornographic websites and businesses.  One of these businesses, Movixo, Inc. d/b/a movixo.com, apparently rents pirated, low-quality copies of pornographic videos and has a history of trademark and other intellectual property violations.  *See* Complaint ¶ 30.  Glacéau cannot tolerate the potential tarnishment that

could attach if **spiritual**water products are confused with **smart**water, and if consumers were to link these brands with Mr. Taieb's pornographic businesses. Complaint ¶ 37.

## FACTS AND PROCEDURAL POSTURE

Defendants' motion to dismiss this case on the ground of a lack of personal jurisdiction is just the latest in a series of attempts by Defendants to delay any progress in this case, which was filed nearly six months ago. In fact, despite Defendants' counsel's representation to the Court that "Defendants conduct no business in New York and their web-site, www.spiritualh2o.com, does not enable a visitor to purchase products on-line," Pre-Motion Letter from Scott Zarin to Judge Denny Chin, dated February 18, 2008, discovery has now proven that Defendants *do* conduct business in New York and New York residents *did* purchase products through Defendants' website. Defendants' motion to dismiss is thus frivolous.

It is undisputed that Defendants, via their website at www.spiritualh2o.com, sold their **spiritual**water product to more than a dozen consumers located in New York prior to the filing of the complaint in this action, and that they continued to offer their products via the Internet for at least some time period after the complaint was filed on November 28, 2007. In particular, Defendants now admit: "From October 2007 through December 2007 … distributors, retailers and consumers were able to purchase Spiritual Brands' products on-line." Defendants' Memorandum of Law in Support of Motion to Dismiss ("D. Mem.") at 2; *see also* Declaration of Joseph Aglione ("Aglione Decl.") ¶¶ 3-5, Exs. A-B. Moreover, Defendants admit that they sold 29 bottles of their product to 14 different customers located in New York. D. Mem. at 2; Declaration of Scott Zarin, Esq. ("Zarin Decl." or "Zarin Declaration") Ex. G. Defendants even include testimonials on

3

their website from New York consumers, boast about the "buzz" **spiritual**water has received in publications such as *The New York Times* and *Newsweek*, and disclose that a regional **spiritual**water event is "coming soon" to "New York, NY." Declaration of S. Zev Parnass ("Parnass Decl.") Exs. B-C; D. Mem. at 2; Zarin Decl. Ex. A ¶ 6, Ex. E.

Glacéau has serious questions regarding the accuracy of Defendants' disclosure of their sales in New York because the sales data was accompanied by no documentary evidence (e.g., invoices, correspondence, shipping records), although such documents were requested, Parnass Decl. Ex. E, and because Defendants' list of their total New York sales did *not* include the sale that was made to Glacéau's investigator located in New York. See Aglione Decl. ¶ 6. However, the sales Defendants admit they did make in New York, even if underreported, are themselves more than sufficient to confer personal jurisdiction in New York.

## ARGUMENT

A.  Standard To Be Applied.

The parties agree that the substantive law applicable to this motion is the New York long-arm statute, N.Y. C.P.L.R. § 302(a). That is because, in a federal question case involving a defendant who resides outside the forum state, a federal court applies the forum state's personal jurisdiction rules. *Philip Morris USA Inc. v. Veles Ltd.*, No. 06 CV 2988, 2007 WL 725412, at *3 (S.D.N.Y Mar. 12, 2007).

The parties do not, however, agree on the burden of proof that the Court should use in ruling on this motion. Glacéau submits that it need only persuade the Court that its factual allegations constitute a *prima facie* showing of jurisdiction because Defendants do not challenge Glacéau's factual allegations (that sales of **spiritual**water occurred in New

4

York); rather, Defendants only challenge whether the facts as alleged by Glacéau are sufficient to avoid dismissal.  *See Philip Morris USA Inc.*, 2007 WL 725412, at *3-4.

Defendants disagree.  They argue that Glacéau must establish personal jurisdiction by a "preponderance of the evidence" because the parties "have conducted several months of jurisdictional discovery."  D. Mem. at 4.  That is a distortion of the actual facts.  Rather, the incontrovertible facts are that the parties have had only preliminary, extremely limited discovery.  On April 9, 2008, Glacéau served Defendants with four document requests narrowly tailored for jurisdictional purposes.  Parnass Decl. ¶ 7, Ex. E.  After taking nearly a month to respond, Defendants (on May 6) provided Glacéau with exactly five pages in response—the two pages that appear as Exhibit G to the Zarin Declaration and three pages of advertisements for **spiritual**water that apparently were used in some capacity in New York.  Parnass Decl. ¶ 8, Ex. F. Defendants did not produce any invoices or shipping records relating to New York sales or any correspondence with New York customers, even though such documents were requested by Glacéau, *see* Parnass Decl. Exs. E-F, and despite the fact that both types of documents plainly exist and likely reside on Defendants' email system or on their servers. *See* Aglione Decl. ¶¶ 4-5, Exs. A-B.  Moreover, as noted above, Glacéau has serious concerns about the completeness and accuracy of the limited discovery Defendants have produced.  *See* p. 4, *supra*.

Because Defendants' motion is tantamount to a demurrer, *see Philip Morris USA Inc.*, 2007 WL 725412, at *3, and because the parties have not conducted thorough, probing discovery on the issues related to personal jurisdiction, the Court need only determine whether Glacéau has established a *prima facie* basis for personal jurisdiction.

5

However, even under the Defendants' proposed standard (that is, whether Glacéau has proven jurisdiction by a preponderance of the evidence), it is clear that Defendants had adequate contacts with New York to justify this Court's exercise of jurisdiction, for the reasons discussed below.

B.  C.P.L.R. § 302(a)(1)—Personal Jurisdiction is Proper Based on Defendants' Sales of Infringing Goods in New York.

Personal jurisdiction in this case is proper based on Defendants' undisputed sales of the allegedly infringing goods in New York. Under C.P.L.R. § 302(a)(1), jurisdiction is proper if a defendant "transacts any business within the state or contracts anywhere to supply goods or services in the state." Defendants fall squarely within the terms of that section because they have transacted business in New York by selling the bottled water at issue in this state, and have contracted to supply bottled water to residents in New York. Because Glacéau's infringement and dilution claims arise from these New York sales, this Court has an irrefutable basis for asserting personal jurisdiction over Defendants. *Cenage Learning, Inc. v. Buckeye Books*, 531 F. Supp. 2d 596, 599 (S.D.N.Y. 2008) (jurisdiction over trademark claim proper based on alleged sales of unauthorized textbooks from outside New York to New York consumers); *Pearson Educ. v. Shi*, 525 F. Supp. 2d 551, 557 (S.D.N.Y. 2007) (sales of 19 infringing books to New York customers via the Internet "constitute an adequate showing of Defendants' purposeful contacts with New York"); *Rubin v. City of New York*, No. 06 Civ. 6524, 2007 WL 950088, at *3 (S.D.N.Y. Mar. 29, 2007) ("articulable nexus" between sale of infringing goods to New York residents via the Internet and trademark claims supports personal jurisdiction);

6

*Philip Morris USA Inc.*, 2007 WL 725412, at *5 (denying motion to dismiss trademark claim where defendants had sold unauthorized cigarettes in New York via their website).

*Cenage Learning* is directly on point. In *Cenage Learning*, one of the defendants sold infringing and unauthorized textbooks through its website. Plaintiffs, who were located in New York, purchased the textbooks through the website, and the defendant then shipped nine of those textbooks into New York. *Cenage Learning*, 531 F. Supp. 2d at 598-99. Even though the defendant was physically located in Ohio, did not have any offices, agents, telephone listings or mailing addresses in New York, did not own or rent any property in New York, did not have any employees in New York and did not advertise in New York publications, and even though the ***only*** sale in New York was the one sale of nine textbooks to the plaintiffs themselves, the court noted that jurisdiction was appropriate under § 302(a)(1) because "the 'cause of action [arose] from' the 'acts which are the basis of jurisdiction.'" Significantly, the Court specifically held that "***even one transaction is sufficient***" for personal jurisdiction. *Id.* (emphasis added).

The facts of the instant case support a finding of personal jurisdiction even more strongly than those in *Cenage Learning*. Here, it is undisputed that Defendants (through their website) sold their **spiritual**water products to *at least* 14 different customers in New York. *See* D. Mem. at 2; Zarin Decl. Ex. G. And, as noted above, the actual figure is even higher. Aglione Decl. ¶¶ 3, 6.

Defendants do not dispute that they have sold **spiritual**water products in New York nor do they argue that these sales are an insufficient basis for personal jurisdiction. *See* D. Mem. at 2; Zarin Decl. Ex. G. Instead, Defendants argue at great length that their website somehow cannot form the basis for personal jurisdiction because it is a passive

7

website through which direct consumer purchases are presently unavailable. D. Mem. at 5-7. This argument is wholly without merit.

First, whether Defendants' website can be classified as interactive or passive is irrelevant where there is undisputed evidence of actual sales to New York and the cause of action arises directly from those sales. It is the fact that physical goods were sold in this state, and not the advertising on the website, that provides the primary anchor for Glacéau's claims. For this reason, Defendants' reliance on *ISI Brands, Inc. v. KCC Int'l, Inc.*, 458 F. Supp. 2d 81 (E.D.N.Y. 2006), for the proposition that a passive website may not form the basis for personal jurisdiction in New York, is misplaced. D. Mem. at 6-7.[1]

Second, and perhaps more importantly, at the time this cause of action arose, Defendants' website undisputedly was interactive in nature and enabled direct consumer purchases of **spiritual**water products. In fact, more than a dozen New York consumers actually purchased Defendants' **spiritual**water products through their website. *See* D. Mem. at 2; Zarin Decl. Ex. G. Although Defendants apparently removed sales capabilities from their website after Glacéau filed its complaint in this action,[2] that post-litigation gambit does nothing to undermine the indisputable fact that Defendants were

---

[1] Moreover, in *ISI Brands*, there was ***no evidence*** of sales of infringing products to anybody other than the plaintiff's agents (who made their purchases only ***after*** the lawsuit already had been filed), and the existence of the defendant's website was the plaintiff's only potential basis for asserting jurisdiction. *ISI Brands*, 458 F. Supp. 2d at 88-89; *see also Pearson Educ.*, 525 F. Supp. 2d at 556 (distinguishing *ISI Brands* and finding personal jurisdiction based on 19 sales of infringing books in New York).

[2] Defendants still operate an interactive website in that they sell **spiritual**water business cards and stationary on their website for use by their distributors. Parnass Decl. Ex. D.

operating an interactive website at the time the complaint was filed. *See* Aglione Decl. Ex. A; *Launer v. Buena Vista Winery, Inc.*, 916 F. Supp. 204, 209 (E.D.N.Y. 1996) (where cause of action arose from past transactions in New York, personal jurisdiction was proper even though the defendant apparently was no longer transacting business in New York at the time the suit was brought); *see also Rubin*, 2007 WL 950088, at *1-3, n.2 (personal jurisdiction found even though the alleged infringer had suspended operation of his website before the filing of the action and pending its resolution); *Pearson Educ.*, 525 F. Supp. 2d at 556 (noting that the cause of action—the sale of infringing books to New York residents—occurred before the filing of the lawsuit).[3]

Because it is undisputed that Defendants have sold goods in New York bearing the **spiritual**water trade dress at issue in this case, and because Glacéau's claims arise directly from the harm inherent in those sales, this Court has personal jurisdiction over Defendants pursuant to C.P.L.R. § 302(a)(1).

C.  C.P.L.R. § 302(a)(3)—Personal Jurisdiction also is Proper Based on Defendants' Tortious Activities Outside of New York which Have Caused Injury in New York.

An independent basis for personal jurisdiction is that Defendants, who derive substantial revenue from their interstate sales of **spiritual**water, have committed a tort (infringement and dilution of the **smart**water trade dress) from Florida that has caused expected harm within New York. As such, Defendants have submitted to this Court's

---

[3] Defendants also allege that they "currently have no connections whatsoever to New York." D. Mem. at 7. Although this is not relevant for the reasons set forth above, it is worth noting that Defendants have not unambiguously stated that no sales of their product have been made to New York residents, either directly or through distributors, since their business model has changed (*i.e.*, after December 2007).

9

jurisdiction because, under C.P.L.R. § 302(a)(3)(ii), personal jurisdiction is proper where a defendant: (1) has committed a tort outside New York; (2) has caused injury to persons in New York; (3) expected or reasonably should have expected its tortious activity to have consequences in New York; and (4) derives substantial revenue from interstate and/or international commerce.

1.  Trademark Infringement is Tortious Activity

By selling products bearing the infringing **spiritual**water trade dress from its headquarters in Florida, Defendants have committed a tort for purposes of long-arm jurisdiction. *See PDK Labs, Inc. v. Proactive Labs, Inc.*, 325 F. Supp. 2d 176, 180 (E.D.N.Y. 2004) (offering infringing goods for sale on website maintained outside New York constitutes tort for purposes of determining long-arm jurisdiction); *Ivoclar Vivadent, Inc. v. Ultident, Inc.*, No. 04-CV-0984, 2005 WL 1421805, at *4 (W.D.N.Y. June 15, 2005) (illegally importing, distributing, advertising and selling infringing products constitutes a tort for purposes of long-arm jurisdiction).

2.  By Causing Confusion and Deception among Glacéau's Potential Customers, Defendants Have Caused Injury in New York

Glacéau, a New York-based entity, has suffered economic injury and loss of goodwill in New York due to the infringement of its well-known and distinctive trade dress. That is because "the 'first effects' of trademark infringement or dilution are typically felt where the trademark owner resides and conducts business, and can include injury in the form of damage to goodwill, lost sales, or lost customers." *Savage Universal Corp. v. Grazier Const., Inc.*, No. 04 Civ. 1089 (GEL), 2004 WL 1824102, at *9 (S.D.N.Y. Aug. 13, 2004); *see also Citigroup Inc.*, 97 F. Supp. 2d at 568 ("Injury

10

within the state includes harm to a business in the New York market in the form of lost sales or customers.").

It is undisputed that actual and/or potential New York customers have encountered Defendants' infringing trade dress both in person and via their website. D. Mem. at 2 (sales to New York); Zarin Decl. Ex. G (same); Parnass Decl. Ex. B (website testimonials from New York customers). The likely confusion and dilution that stems from these encounters constitutes sufficient harm to satisfy long-arm jurisdiction. *Am. Network, Inc. v. Access Am./Connect Atlanta, Inc.*, 975 F. Supp. 494, 497 (S.D.N.Y. 1997) ("claims that . . . New York computer users . . . have been confused and deceived … are sufficient to satisfy the statute's requirement of injury within the state"); *Starmedia Network, Inc. v. Star Media, Inc.*, No. 00 Civ. 4647 (DLC), 2001 WL 417118, at *2 (S.D.N.Y. Apr. 23, 2001) ("injury 'within the state' includes . . . harm and threatened harm in the New York market resulting from the confusion and deception of New York computer users").

    3.    <u>Defendants Reasonably Should Have Expected Their Infringing Conduct to Have Consequences in New York</u>

By distributing **spiritual**water products to consumers in New York and displaying the infringing trade dress on a website viewed by New York consumers, Defendants reasonably should have expected their infringing conduct to have consequences in this state. *Am. Network, Inc.*, 975 F. Supp. at 498 (where a retailer is attempting to sell its goods on a nationwide basis, and actually has customers in New York, publishing an infringing mark on a retail website establishes a reasonable expectation of consequences in New York); *Roberts-Gordon, LLC v. Superior Radiant Prods., Ltd.*, 85 F. Supp. 2d

11

202, 216 (W.D.N.Y. 2000) (one who uses trademarked logos on a retail website viewable throughout the U.S., including in the state where the trademark owner is based, "expects or should reasonably expect the act to have consequences in the state"); *see also Cable News Network, L.P. v. GoSMS.com, Inc.*, No. 00 Civ. 4812 (LMM), 2000 WL 1678039, at *4 (S.D.N.Y. Nov. 6, 2000) (defendant reasonably expected consequences in New York where website announced availability of copyright-infringing services in the United States and plaintiff alleged that infringing material had been sent to New York residents). Defendants were fully aware that New York consumers had encountered their infringing trade dress and that they were trading off Glacéau's goodwill in New York as a result: Defendants sold **spiritual**water products to at least 14 New York residents via their website, and two of the ten customer "testimonials" on their website are from New York residents. *See* D. Mem. at 2; Zarin Decl. Ex. G; Parnass Decl. Ex. B. Furthermore, in boasting about the "buzz" **spiritual**water has received in publications nationwide, Defendants specifically aver that *The New York Times* ran a story about their product. D. Mem. at 2; Zarin Decl. Ex. A ¶ 6, Ex. E. Defendants have even announced that they intend to hold a regional event about **spiritual**water here in New York City. Parnass Decl. Ex. C. On their website, and even in this Court, Defendants flaunt the exposure of their infringing product to the New York market; they cannot at the same time turn a blind eye to the injuries they have caused in this state. Defendants' reasonable expectation of consequences in New York amply satisfies this Court's long-arm jurisdiction.

    4.    By Peddling Their Goods on a Nationwide Basis, Defendants Derive Substantial Revenue from Interstate Commerce

By launching a nationwide marketing and distribution system for their **spiritual**water products, "the overall nature" of Defendants' business dictates that they "can fairly be expected to defend lawsuits in foreign forums." *Ronar, Inc. v. Wallace*, 649 F. Supp. 310, 317 (S.D.N.Y. 1986); *see also Justus v. Toyo Kensetsu Kohki Co., Ltd.*, 228 F. Supp. 2d 215, 221 (N.D.N.Y. 2002).

Defendants' business is not of the local nature intended to be excluded from long-arm jurisdiction. *Cf. Digital Lab Solutions, LLC v. Stickler*, No. 06 Civ. 6482 (LLS), 2007 WL 700821, at *4 (S.D.N.Y. Mar. 7, 2007) (defendants did not regularly do or solicit business outside of California). Defendants' website, in at least two places, touts **spiritual**water as a nationwide brand that is in the process of expanding internationally:

> (1)    "Spiritual Water is sold in the United States, and we are in the process of expanding worldwide and build[ing] a global spiritual brand." Parnass Decl. Ex. A; Zarin Decl. Ex. F.
>
> (2)    "Spiritual Water is sold in the United States, with worldwide growth projections and goals in the near future." Parnass Decl. Ex. A.

Additionally, Defendants' website displays customer testimonials from New York, California, Florida, Massachusetts, South Carolina and Texas. Parnass Decl. Ex. B. Defendants also boast about the coverage they have received in "national publications" such as *The New York Times* and *Newsweek*. D. Mem. at 2; Zarin Decl. Ex. A ¶ 6, Ex. E. Defendants cannot publicly declare their nationwide success and portray happy customers around the country, and at the same time claim that they run a local, intrastate business so as to evade the substantial interstate revenue prong of New York's long-arm statute. *See*

13

*Roberts Gordon*, 85 F. Supp. 2d at 217 (interstate commerce prong satisfied where seller's website included claims that it had "distribution capacity to 'provide sales coverage throughout North America with projects ongoing from Texas to Northern California'"); *see also Mfg. Tech., Inc. v. Kroger Co.*, No. 06 Civ. 3010 (JSR), 2006 WL 3714445, at *2 (S.D.N.Y. Dec. 13, 2006) (interstate commerce prong satisfied where defendant claimed "[W]e have successfully conducted projects in [12 states] … We have experienced no difficulty in managing projects in any area of the country."); *Bassili*, 242 F. Supp. 2d at 230 (interstate commerce prong satisfied where defendant's website featured testimonials from customers around the United States and the world); *Cable News Network*, 2000 WL 1678039, at *5 ("The important fact in this analysis is that [defendant's] operations are international and in no way limited to California.").

Defendants nonetheless claim that a "majority" of their sales derive from Florida. D. Mem. at 2. Even if that is true (and Defendants have provided no documentary support for this assertion), *see* Parnass Decl. ¶ 8, Ex. F,[4] far less than a majority is required for interstate revenue to be substantial. *See Hamilton v. Accu-Tek*, 32 F. Supp. 2d 47, 69 (E.D.N.Y. 1998) (after surveying district court cases, noting that as little as 5% of revenue from interstate commerce may be substantial). Here, any precise measurement is impossible because Defendants have not provided any evidence of their

---

[4] The lack of financial information does not mean that substantial interstate revenue has not been established. "Dismissal is inappropriate even where there is no proof that a defendant 'derives substantial revenue from interstate or international commerce,' where 'that knowledge is peculiarly under the control of the [defendant],' and may come to light in the course of '[s]ubsequent discovery.'" *Mfg. Tech., Inc.*, 2006 WL 3714445, at *3.

14

total revenues.  Regardless, as noted above, the major concern in evaluating interstate revenues is the nature of a defendant's business and the fairness of its defending suit in a foreign state, not a mechanical application of a formula.  *See, e.g.*, *Justus*, 228 F. Supp. 2d at 221.  The purported national scope of Defendants' business indicates that they are fully able—and reasonably should have expected—to defend a suit in New York that arises from the nationwide dissemination of their infringing products.

## **CONCLUSION**

For all of the foregoing reasons, Glacéau respectfully requests that the Court deny Defendants' motion to dismiss.  In addition, given the baseless nature of Defendants' motion, Glacéau requests that Defendants be sanctioned for pursuing the motion, even after admitting the facts showing Defendants' sales in New York, and that the Court, pursuant to its inherent powers, order Defendants to reimburse Glacéau for its fees and expenses incurred in defending against this motion.  *See Jones v. Hirschfeld*, 348 F. Supp. 2d 50, 62 (S.D.N.Y. 2004) (awarding sanctions in the form of attorneys' fees and costs for filing meritless motion [for a jury trial] for the sole purpose of burdening plaintiff's counsel with additional work and delaying the proceedings); *Dux S.A. v. Megasol Cosmetic GmbH*, No. 03-CV-8820, 2006 WL 44007, at *4 (S.D.N.Y. Jan. 9, 2006) (awarding attorneys' fees and costs to defendant as a result of a frivolous preliminary injunction motion by plaintiff; "[w]hen a motion is brought without legal or factual justification, indeed contrary to facts, many documented, and there being no

colorable claim discernable, the bad faith for that motion not only can be inferred, but is obvious, and sanctions are warranted").

Dated: May 16, 2008
      New York, New York

                          DEBEVOISE & PLIMPTON LLP

                          By: /s/ S. Zev Parnass
                              David H. Bernstein
                              (dhbernstein@debevoise.com)
                              S. Zev Parnass
                              (szparnass@debevoise.com)
                          919 Third Avenue
                          New York, New York 10022
                          (212) 909-6696 (telephone)
                          (212) 521-7696 (facsimile)

                          *Attorneys for Plaintiff Energy Brands Inc.*
                          *d/b/a Glacéau*

## CERTIFICATE OF SERVICE

I, S. Zev Parnass, an attorney admitted in the State of New York, caused on this 16th day of May, 2008, a copy of Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss, the Declaration of S. Zev Parnass and the Declaration of Joseph Aglione to be served, by mail, upon:

Scott Zarin, Esq.
Zarin & Associates P.C.
1775 Broadway, Suite 2300
New York, New York 10019

*Attorney for Defendants*

I certify under the penalty of perjury that the foregoing is true and correct.

/s/ S. Zev Parnass
S. Zev Parnass