**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
:
ENERGY BRANDS, INC. d/b/a                    :
:
                  Plaintiff,          :          Case No. 07-10644 (DC)
:
      v.                                  :          **Defendants' Memorandum**
:          **of Law In Support of**
SPIRITUAL BRANDS, INC. and                   :          **Motion to Dismiss**
ELICKO TAIEB,                                :
:
              Defendants.          :
:
-------------------------------------------------------------x

COMES NOW Defendants Spiritual Brands, Inc. ("Spiritual Brands") and

Elicko Taieb ("Taieb"), through their attorneys Zarin & Associates P.C., with this

memorandum of law in support of their motion to dismiss, pursuant to Fed. R. Civ.

P. 12(b)(2), requesting dismissal of Plaintiff Energy Brands, Inc. ("Energy Brands")

Complaint.


I.    **Statement of Facts**

In 2006, Elicko Taieb ("Taieb"), a Florida businessman, had an epiphany. He

realized that there was a market for a bottled water drink with a religious theme. (Exh.

A, ¶3). Consequently, Taieb decided to create such a product and start a company

whose purpose was to sell this product. (Exh. A, ¶5).

He spent several months developing his bottled water drink and fashioning its

brand. (Exh. A, ¶4). In doing so, Taieb decided that the mission of the brand would

be to "help people think positive, lift up their spirit, give them a chance to believe in

themselves and let them know that God is with them." (Exh. B).  In keeping with this mission, Taieb decided to call the brand 'Spiritual Water'. (Exh. A, ¶3).   And in keeping with the brand's religious theme, Taieb created eleven (11) different "beautifully rendered artistic labels that depict full-color images of holy person or symbols, with prayers in English and Spanish and/or inspirational words and messages," and "each [of which has] its own uniquely paired message and image." (Exh. C; Exh. D; Exh. A, ¶4)

After working countless hours to develop the brand, in September 2007 Taieb introduced his products to the food and beverage industry at a trade show in Miami. (Exh. A, ¶6).  The products received much buzz at the show, and several national publications, including Newsweek and the New York Times, ran stories about them. (Exh. E; Exh. A, ¶6).

In October 2007, Taieb launched a web-site, www.spiritualh2o.com, to provide information about the products and the company which sold them, which he named Spiritual Brands, Inc. and incorporated in Florida. (Exh. F; Exh. A, ¶¶5, 7). Before launching this web-site, Taieb had decided to employ a conventional business model to sell his products, selling them to distributors and retailers. (Exh. A, ¶5). From October 2007 through December 2007, therefore, distributors, retailers and consumers were able to purchase Spiritual Brands' products on-line.  During this short time period, the majority of on-line sales were to distributors, retailers and consumers in Florida.  And only fourteen (14) of those sales, for sales totaling $158.53, were by individuals in New York. (Exh. A, ¶10; Exh. G).

After the food and beverage trade show in 2007, Taieb reconsidered his business model, and decided to employ a 'direct selling' business model. (Exh. A, ¶8). Under this model, Spiritual Brands would recruit representatives, who would then sell its products 'directly' to consumers. (Exh. A, ¶8). As Spiritual Brands explains, "[p]eople in the direct selling industry are often known as independent consultants, distributors or representatives," and "direct selling (some of us know it as Network Marketing) is a way to sell products or services directly to customers, away from a retail location." (Exh. H).

To reflect its new 'direct selling' business model, in January 2008, Spiritual Brands completely revamped its web-site. (Exh. A, ¶9). Unlike the previous version of its site, this reconstituted web-site does not allow retailers or distributors to purchase Spiritual Water on-line. Rather, it simply provides prospective representatives with information about Spiritual Brands' products and the benefits of becoming a Spiritual Brands representative, and invites these prospective representatives to contact Spiritual Brands for more information. (Exh. A, ¶9; Exh. I).

Apparently becoming aware of Spiritual Water through the national media attention it received in the fall of 2007, in October 2007, Energy Brands, Inc., a company which produces and sells a bottled water drink known as 'Smart Water', wrote Spiritual Brands a cease and desist letter, claiming that the shape of Spiritual Water's bottle and Spiritual Water's logo, which is composed of the words 'Spiritual Water' positioned vertically on its bottle and with the word 'Spiritual' in bold, violates the trade dress of its 'Smart Water' products.

3

Shortly thereafter, Plaintiff Energy Brands filed the instant action in this Court against Defendants Taeib and Spiritual Brands, Inc, asserting claims for trade dress infringement and dilution. (Exh. J). Defendants have not filed an Answer, but instead hereby move to dismiss, pursuant to Fed. R. Civ. P. 12(b)(2), on the ground that the Court has no personal jurisdiction over Defendants Taieb and Spiritual Brands, Inc.

## II.    Argument

Pursuant to Fed. R. Civ. P. 12(b)(2),

> [a] court must dismiss an action against a defendant over whom it has no personal jurisdiction. Plaintiffs bear the ultimate burden of establishing, by a preponderance of the evidence, that the court has jurisdiction over each defendant. At the pretrial stage, a plaintiff ordinarily carries this burden by pleading in good faith legally sufficient allegations of jurisdiction. However where, as here, the parties have conducted several months of jurisdictional discovery, plaintiffs bear the burden of proving that personal jurisdiction exists by a preponderance of the evidence. All pleadings and affidavits must be construed in the light most favorable to the plaintiff, and where doubts exist, they must be resolved in the plaintiff's favor.

*Nelson v. Massachusetts General Hospital*, 2007 U.S. Dist. LEXIS 70455 at *40 (September 20, 2007 S.D.N.Y.) (citations omitted); see also *Pearson Education, Inc. v. Yi Shi*, 525 F. Supp.2d 551, 554-55 (S.D.N.Y. 2007).

### A.    The Court Lacks Specific Personal Jurisdiction Over Defendants Pursuant to C.P.L.R. §302(a)

Plaintiff has alleged that this Court maintains personal jurisdiction over Spiritual Brands pursuant to N.Y. C.P.L.R. §301, the general jurisdiction provision of New York's long-arm statute, and C.P.L.R. §302(a), the specific jurisdiction provision

of New York's long-arm statute. (Exh. J, ¶11).   Neither of these statutes, however, provide this Court with personal jurisdiction over Defendants.

Plaintiff does not specify which of the three subsections of section 302(a) it believes enable the Court to exercise personal jurisdiction over Defendants. Regardless, none of those subsections confers the Court with such personal jurisdiction.

1.     **Section 302(a)(1) Does Not Confer This Court With Personal Jurisdiction Over Defendants**

Under section 302(a)(1), a court has personal jurisdiction over a non-domiciliary defendant if: (1) the plaintiff's "cause of action arises from [the] acts which are the basis of jurisdiction"; and (2) the defendant "transacts any business within the state or contracts anywhere to supply goods or services in the state." C.P.L.R. §302(a)(1).  Plaintiff has alleged that Defendants have sold products over the internet whose logo and bottle infringes that of their products' trade dress. (Exh. J, ¶11).

Arguably, Plaintiff's trade dress claim arises out of the acts committed by Defendants which form the purported basis of jurisdiction; that is, Defendants' sale of the allegedly infringing products.  Indisputably, however, Defendants do not transact business within New York or contract with anybody to supply their products in New York.

Plaintiff alleges that Defendants sell their products in New York through their web-site, www.spiritualh2o.com. (Exh. J, ¶11).

> In order to determine the existence of personal jurisdiction in internet cases, courts inquire as to whether the defendant maintains an interactive website which permits the exchange of information between users in another state and the defendant, which depending on the level and nature of the exchange may be a basis for jurisdiction. The courts have recognized the existence of passive websites which make information available, as well as active websites which allow consumers to exchange information and actually do business through the internet.

*ISI Brands, Inc. v. KCC International, Inc.*, 458 F. Supp.2d 81, 86 (E.D.N.Y. 2006) (citations omitted); see also *Lenahan Law Offices, LLC v. Hibbs*, 2004 U.S. Dist. LEXIS 30528 at *5-8 (December 22, 2004 W.D.N.Y.). "Internet websites that are not of a commercial nature and do not permit the purchase of products on-line are not sufficient to confer personal jurisdiction pursuant to *section 302(a)(1)*." *ISI Brands*, 458 F. Supp.2d at 86. Indeed, "[w]ebsites that are of a commercial nature and permit consumers to place orders and e-mail questions, can confer personal jurisdiction pursuant to *section 302(a)(1)*." *Id.* Importantly, however, "Courts are reluctant to find personal jurisdiction unless the website specifically targets New Yorkers, or is aimed at New York users." *Id.* at 87. Moreover, in the cases involving commercial websites in which courts have found sufficient activity to confer personal jurisdiction, the defendant's solicitation activity was "not solely limited to the internet". *Id.* at 86.

In the case at bar, Defendants' website is of a commercial nature, but it does not permit *consumers* to place orders with, or e-mail questions to, Defendants. As previously noted, Defendants employ a 'direct sales' business model. (Exh. A, ¶8). Under this model, Defendants recruit representatives who personally sell Defendants' products to consumers. (Exh. A, ¶8). Defendants' website is the primary tool through which they recruit representatives. (Exh. A, ¶9; Exh. H).

Importantly, Defendants do not sell their products through this website or even in retail stores. (Exh. A, ¶8). In order to purchase Defendants' products, *consumers* must contact one of Defendants' representatives. Indeed, Defendants' website invites individuals to e-mail questions to Defendants. It does not, however, invite *consumers* to contact Defendants. Rather, it invites prospective *representatives* who wish to sell Defendants' products to contact them. (Exh. A, ¶9). As Defendants' website does not invite *consumers* to purchase their products on-line or to interact with Defendants in any way, contrary to Plaintiff's assertion, this web-site does not confer the Court with personal jurisdiction over Defendants pursuant to section 302(a)(1).

Even if Defendants' website invited *consumers* to purchase and communicate with Defendants, however, that website nonetheless would not confer personal jurisdiction upon this Court because it does not specifically target or aim at New Yorkers. Precisely as in *ISI Brands*,

> the Plaintiff alleges only that the Defendant sells products nationally through an interactive website; the Plaintiff does not allege any other connections to New York. The Plaintiff does not claim that the Defendant purposefully solicits New York customers; makes mailings to New York residents; enters contracts in New York; or that its website is in any way targeted towards New York.

*ISI Brands*, 458 F. Supp.2d at 87. Other than the fact that people in New York can view Defendants' web-site, Defendants currently have no connections whatsoever to New York.

2.    **Section 302(a)(2) Does Not Confer This Court With Personal Jurisdiction Over Defendants**

Under C.P.L.R. §302(a)(2), a court can exercise personal jurisdiction over a non-domiciliary who "commits a tortious act *within* the state." Section 302(a)(2), however, "reaches only tortious acts performed by a defendant who was physically present in New York when he performed the wrongful act." *ISI Brands*, 458 F. Supp.2d at 89 (citing *Bensusan Restaurant Corp. v. King*, 126 F.3d 25, 28 (2d Cir. 1997); see also *Unique Industries, Inc. v. Sui & Sons International Trading Corp.*, 2007 U.S. Dist. LEXIS 83725 at *11-17 (November 9, 2007 S.D.N.Y.). Moreover, "[c]ourts have held that, when websites display infringing marks, the tort is committed where the website is created and/or maintained." *ISI Brands*, 458 F. Supp.2d at 89.

Defendants created and maintain their web-site in Florida, where Spiritual Brands is incorporated and located and where Defendant Taieb resides. (Exh. A, ¶¶2, 5, 7). As in *ISI Brands*, then,

> any tort arising from [Defendants'] use of the Plaintiff's mark on its website is committed in the state of Florida, not New York. To hold otherwise would create nationwide (indeed, worldwide) personal jurisdiction over anyone and everyone who establishes an Internet website.

*Id.* This Court, therefore, cannot exercise personal jurisdiction over Defendants pursuant to C.P.L.R. §302(a)(2).

3.    **Section 302(a)(3) Does Not Confer This Court With Personal Jurisdiction Over Defendants**

Under C.P.L.R. §302(a)(3), a court can exercise personal jurisdiction over a non-domiciliary who "commits a tortious act *without* the state causing injury to person or property within the state" if he:

(i)    regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

(ii)    expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

C.P.L.R. §302(a)(3).  In the case at bar, neither of these two provisions is satisfied.

Defendants do not regularly solicit business or engage in any persistent course of conduct in New York.  Nor have Defendants derived any significant revenue from the sale of their products in New York. (Exh. A, ¶¶10, 11).

Furthermore, Defendants do not expect and should not reasonably expect their website to have consequences in New York.

The test of whether a defendant expects or should reasonably expect his act to have consequences within the State is an objective rather than subjective one. New York courts have asserted that the simple likelihood or foreseeability that a defendant's product will find its way into New York does not satisfy this element, and that purposeful availment of the benefits of the laws of New York such that the defendant may reasonably anticipate being haled into New York court is required.

*Pitbull Productions, Inc. v. Universal Netmedia, Inc.*, 2008 U.S. Dist. LEXIS 30633 at *24 (April 4, 2008 S.D.N.Y.) (citations omitted).

As previously noted, Defendants do not sell their products, either to consumers or to their representatives, over their web-site.  Rather, the website merely invites prospective representatives to contact them to discuss the possibility of becoming a representative. (Exh. A, ¶9).  It is not reasonably foreseeable, therefore, for Defendants to "be subjected to New York jurisdiction." *Id.*  Section 302(a)(3) therefore also does not confer this Court with personal jurisdiction over Defendants.

**B.    The Court Lacks General Personal Jurisdiction Over Defendants Pursuant to C.P.L.R. §301**

Pursuant to C.P.L.R. §301,

> New York subjects a foreign corporation to general jurisdiction if it is "doing business" in the state. Under this test, a foreign corporation is amenable to suit in New York if it is engaged in such a continuous and systematic course of doing business here as to warrant a finding of its presence in this jurisdiction.
>
> . . .
>
> Casual or occasional activity does not constitute doing business; rather, §301 requires a showing of continuous, permanent, and substantial activity in New York.

*Nelson*, 2007 U.S. Dist. LEXIS 70455 at *41-42 (citations omitted); see also *Unique Industries*, 2007 U.S. Dist. LEXIS 83725 at *10-13 n. 4. Moreover,

> [i]t is well established that solicitation of business alone will not justify a finding that a foreign corporation is "doing business" in New York. However, if the solicitation is substantial and continuous, then personal jurisdiction may be found to exist as long as the defendant engages in other activities of substance in the state.

*Nelson*, 2007 U.S. Dist. LEXIS 70455 at *43 (citations omitted).

Plaintiff appears to allege that Defendants are "doing business" in New York, because they are soliciting business through their web-site. First, not only do Defendants fail to engage in "substantial and continuous" solicitation of business in New York through their web-site, but, as previously explained, they do not solicit any business whatsoever through that web-site. (Exh. A, ¶9). Rather, the function of Defendants' web-site is simply to recruit representatives to sell Defendants' products to consumers. (Exh. A, ¶9). Furthermore, even if Defendants' web-site were deemed to effectuate a "substantial and continuous" solicitation of business in New York, Defendants cannot be considered to be "doing business" in New York because they

do not engage in any other activities in New York. (Exh. A, ¶11). Section 301,

therefore, does not confer this Court with personal jurisdiction over Defendants.

In *Nelson*, the court insightfully observed that

[t]his court is aware of no case where a finding of substantial solicitation under the general jurisdiction statute was predicated on the operation of an interactive website that has generated a small amount of activity and a *de minimus* amount of revenue in the forum state. There is, however, considerable authority to the contrary. Were it otherwise, every entity or individual that ran a highly interactive website from anywhere in the world could be sued for any reason in New York.

*Nelson*, 2007 U.S. Dist. LEXIS 70455 at *65 (citations omitted).

Contrary to Plaintiff's assertion in paragraph 11 of its Complaint, neither

C.P.L.R. §302(a) nor §301 confer upon this Court the authority to exercise personal

jurisdiction over Defendants. Consequently, the Court lacks personal jurisdiction

over Defendants under Fed. R. Civ. P. 12(b)(2), and must dismiss this action.

## III.    Conclusion

For all the foregoing reasons, therefore, this Court should: (1) GRANT

Defendants' Taeib and Spiritual Brands, Inc.'s motion to dismiss; and (2) DISMISS

this action.

Date:   May 2, 2008                            Zarin & Associates P.C.

Scott Zarin (SZ-7134)
1775 Broadway, Suite 2300
New York, NY 10019
Tel. (212) 580-3131
Fax. (212) 580-4393
scottzarin@copyrightrademarkcounsel.com

Attorneys for Defendants
Spiritual Brands, Inc. and
Elicko Taeib