USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/16/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x

ENERGY BRANDS INC. d/b/a GLACÉAU,    :

               Plaintiff,    :    **OPINION**

     - against -    :    07 Civ. 10644 (DC)

SPIRITUAL BRANDS, INC. and    :
ELICKO TAIEB,
                   :

               Defendants.    :

- - - - - - - - - - - - - - - - - -x

**APPEARANCES:**    DEBEVOISE & PLIMPTON LLP
                Attorneys for Plaintiff
                    By:  Steven Zev Parnass, Esq.
                       David H. Bernstein, Esq.
                919 Third Avenue
                New York, New York  10022

                ZARIN & ASSOCIATES P.C.
                Attorneys for Defendants
                    By:  Scott Zarin, Esq.
                1775 Broadway, Suite 2300
                New York, New York  10019

**CHIN, District Judge**

       Plaintiff Energy Brands Inc., doing business as Glacéau
("Glacéau"), the maker of the popular smartwater and vitaminwater
products, brings this action against Spiritual Brands, Inc.
("Spiritual Brands") and its principal, Elicko Taieb, for trade
dress infringement and unfair competition based on defendants'
launch of a purified bottled water product, Spiritual Water.
Glacéau alleges that defendants embarked on an unlawful campaign
to cause consumers to believe that Spiritual Water products were
affiliated with the smartwater and vitaminwater brands.
Defendants now move to dismiss the complaint pursuant to Fed. R.
Civ. P. 12(b)(2) for lack of personal jurisdiction.  For the
reasons that follow, the motion is denied.

**BACKGROUND**

A.    **The Facts**

A motion to dismiss pursuant to Fed. R. Civ. P.
12(b)(2) is "'inherently a matter requiring the resolution of
factual issues outside of the pleadings . . . [and] all pertinent
documentation submitted by the parties may be considered in
deciding the motion.'"  Yellow Page Solutions, Inc. v. Bell Atl.
Yellow Pages Co., No. 00 Civ. 5563 (MBM), 2001 WL 1468168, at *1
(S.D.N.Y. Nov. 19, 2001) (quoting Pilates, Inc. v. Pilates Inst.,
Inc., 891 F. Supp. 175, 178 n.2 (S.D.N.Y. 1995)).  Therefore, the
following facts are drawn from the complaint, declarations, and
exhibits submitted by both parties, and are construed in the
light most favorable to plaintiff.  See A.I. Trade Fin., Inc. v.
Petra Bank, 989 F.2d 76, 79-80 (2d Cir. 1993); CutCo Indus., Inc.
v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986).

Spiritual Brands is a Florida corporation with its
principal place of business in Florida.  (Zarin Decl. Ex. A ¶ 5).
Taieb is a domiciliary of Florida.  (Id. Ex. A ¶ 2).  Glacéau is
a New York corporation with its principal place of business in
New York.  (Compl. ¶ 7).

Glacéau launched the smartwater brand in 1996 as a
high-quality, vapor-distilled bottled water enhanced with
electrolytes.  (Id. ¶ 13).  Glacéau has spent more than ten years
cultivating its smartwater brand and the product line is now
well-known.  (Id. ¶¶ 2, 6).  Notwithstanding the competition in
the category, the smartwater brand remains the recognized leader
in the electrolyte-enhanced bottled water category.  (Id. ¶ 14).

In 2006 alone, Glacéau's retail revenues from smartwater beverages exceeded $75.6 million, based on the sale of nearly 56 million bottles.  (Id. ¶ 28).

Glacéau's other principal product is a line of flavored water products called vitaminwater.  (Id. ¶ 4).  There are several types of vitaminwater, which have names such as "Balance," "Defense," "Focus," "Formula 50," "Essential," and "Energy."  (Id.).

Spiritual Brands launched its new purified water product, Spiritual Water, in September 2007.  (Id. ¶ 1; Zarin Decl. Ex. A ¶ 6).  Spiritual Water features religious imagery on its packaging.  (Zarin Decl. Ex. D).  Spiritual Water markets eleven different water products with names such as "Balance," "Defense," "Focus," and "Formula J'."  (Id.).  Upon its launch, Spiritual Water was featured in several national publications, including Newsweek and the New York Times.  (Zarin Decl. Exs. A ¶ 6, E).

From October through December 2007, distributors, retailers, and consumers were able to purchase defendants' Spiritual Water products on their website.  Defendants admit that they sold twenty-nine bottles of Spiritual Water product to fourteen different customers in New York State during those months, for a total of $158.53.  (Id. Ex. G).

On or about November 13, 2007, prior to the instant action being filed, Joseph Aglione, a private investigator hired by Glacéau, purchased Spiritual Water on defendants' website, using his wife's name, for delivery to him in New York State.

(Aglione Decl. ¶¶ 1, 3, 4, Ex. A).  He received an introductory email from Spiritual Brands subsequent to placing his online order.  (Id. ¶ 5, Ex. B).  He also emailed a representative of Spiritual Brands via the website regarding his purchase, and the representative responded to his email.  (Id.).

In January 2008, after this suit was filed, Spiritual Brands revamped its website, no longer permitting any internet sales of Spiritual Water products to retailers and distributors, and no longer permitting any sales whatsoever directly to consumers via the internet or otherwise.  (Zarin Decl. Ex. A ¶ 9).  Website visitors are able to purchase Spiritual Water business cards and print items bearing the Spiritual Water mark. (Parnass Decl. Ex. D).

The current and previous versions of the Spiritual Water website include customer testimonials.  (Id. Ex. B).  Two such testimonials are from individuals who identify themselves as hailing from New York:  first, "Bob, NY" who states, "I love spiritual water," and second, "Unknown, NY," who states, in part, "Spiritual Water will help you clean your soul."  (Id.).  The other eight testimonials on the website are from individuals in Florida, Massachusetts, South Carolina, California, and Texas. (Id.).  The current and previous versions of the website also advertise a Spiritual Water event "coming soon" to New York, New York.  (Id. Ex. C).

## B.   **Procedural History**

On November 28, 2007, Glacéau filed the instant complaint, alleging that defendants embarked on an unlawful

campaign to lure consumers into purchasing Spiritual Water under the mistaken belief that it comes from, is sponsored or licensed by, or is associated or affiliated with, the smartwater brand. Glacéau further alleges that the packaging of Spiritual Water products mimics several key elements of smartwater's trade dress. Plaintiff also alleges that several names that defendants selected for their products -- for example, "Balance," "Defense," "Focus," and "Formula J'" -- are strikingly identical to some of Glacéau's popular flavors of vitaminwater.

On May 2, 2008, Spiritual Brands and Taieb moved to dismiss for lack of personal jurisdiction. Glacéau opposes the motion, and requests that the Court impose sanctions and costs.

**DISCUSSION**

## A.    Motions to Dismiss for Lack of Personal Jurisdiction Pursuant to Rule 12(b)(2)

In opposing a motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), "the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." Kernan v. Kurz-Hastings, Inc., 175 F.3d 236, 240 (2d Cir. 1999) (quoting Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996)). At the pleadings stage, prior to discovery, plaintiff is required only to make a prima facie showing of jurisdiction.[1] DiBella v. Hopkins, 187 F. Supp.

---

[1]    "The analysis differs, however, if the jurisdictional challenge involves discovery and a hearing:  in such a case the plaintiff must demonstrate jurisdiction by a preponderance of the evidence." Del Ponte v. Universal City Dev. Partners, Ltd., No. 07 Civ. 2360 (KMK), 2008 WL 169358, at *2 n.1 (S.D.N.Y. Jan. 16,

2d 192, 198 (S.D.N.Y. 2002); <u>Jazini v. Nissan Motor Co.</u>, 148 F.3d 181, 184 (2d Cir. 1998). "[A] prima facie showing of jurisdiction does not mean that plaintiff must show only some evidence that defendant is subject to jurisdiction; it means that plaintiff must plead facts which, if true, are sufficient in themselves to establish jurisdiction." <u>Bellepointe, Inc. v. Kohl's Dep't Stores, Inc.</u>, 975 F. Supp. 562, 564 (S.D.N.Y. 1997).

If the court does not conduct a full evidentiary hearing on the motion to dismiss, plaintiff is required only to make a prima facie showing of personal jurisdiction through affidavits and other materials submitted for the motion. <u>Grand River Enters. Six Nations, Ltd. v. Pryor</u>, 425 F.3d 158, 165 (2d Cir. 2005). In this situation, a court may consider documents beyond the pleadings. <u>See, e.g.</u>, <u>St. Paul Fire & Marine Ins. Co. v. Eliahu Ins. Co.</u>, No. 96 Civ. 7269 (MBM), 1997 WL 357989, at *1 (S.D.N.Y. June 26, 1997) (motion to dismiss for lack of personal jurisdiction requires consideration and resolution of factual issues outside of the pleadings, and the court may consider documents beyond the pleadings). Furthermore, the pleadings and supporting documents shall be construed in the ligh most favorable to plaintiff as the non-moving party. <u>Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.</u>, 918 F.2d 1039, 1043 (2d Cir. 1990).

To determine whether it may exercise personal jurisdiction over a non-domiciliary, a district court engages in

---

2008) (citing <u>Cutco Indus.</u>, 806 F.2d at 364). Here, defendants did not request an evidentiary hearing or discovery.

a two-part analysis.  First, the court determines whether jurisdiction exists under the law of the forum state -- in this case, New York.  <u>Grand River</u>, 425 F.3d at 165.  New York law recognizes two types of personal jurisdiction over non-domiciliaries:  general personal jurisdiction and long-arm personal jurisdiction.  <u>Big Apple Pyrotechnics & Multimedia, Inc.</u> <u>v. Sparktacular Inc.</u>, No. 05 Civ. 9994 (KMW), 2007 WL 747807, at *2 (S.D.N.Y. Mar. 9, 2007).  Second, the exercise of personal jurisdiction must comport with the Due Process Clause of the U.S. Constitution.  <u>D.H. Blair & Co. v. Gottdiener</u>, 462 F.3d 95, 104 (2d Cir. 2006).

### 1.    Long-Arm Jurisdiction in New York

The parties here agree that the relevant substantive law applicable to this motion is N.Y. C.P.L.R. § 302(a), New York's long-arm statute.[2]  Glacéau argues that two sections of the provision -- § 302(a)(1) and § 302(a)(3)(ii) -- provide independent bases for personal jurisdiction over defendants.

### a.    New York C.P.L.R. § 302(a)(1)

Under C.P.L.R. § 302(a)(1), a court in New York may exercise personal jurisdiction over a non-domiciliary party if (1) he "transacts any business within the state" and (2) the "cause of action aris[es] from" the business contacts.  N.Y. C.P.L.R. § 302(a)(1) (McKinney 2006); <u>see</u> <u>Best Van Lines, Inc. v.</u>

---

[2]    Although plaintiff cites N.Y. C.P.L.R. § 301 -- New York's general jurisdiction statute -- as a basis for personal jurisdiction in the complaint, it does not argue it provides a basis for personal jurisdiction in its moving papers. Accordingly, I do not address it.

Walker, 490 F.3d 239, 246 (2d Cir. 2007); D.H. Blair & Co., 462
F.3d at 104.

The "transacting business" element requires a defendant
to have "'purposely availed [himself] of the privilege of
conducting activities within New York and thereby invoked the
benefits and protections of its laws.'"  Bank Brussels Lambert v.
Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 787 (2d Cir. 1999)
(quoting Parke-Bernet Galleries, Inc. v. Franklyn, 308 N.Y.S.2d
337, 341 (1970)) (alterations in original); see also Family
Internet, Inc. v. Cybernex, Inc., No. 98 Civ. 0637 (RWS), 1999 WL
796177, at *5 (S.D.N.Y. Oct. 6, 1999).  Section 302 is a
"single-act statute requiring but one transaction -- albeit a
purposeful transaction -- to confer jurisdiction in New York."
Grand River, 425 F.3d at 166 (internal quotation omitted).

The "arising out of" element requires "a substantial
nexus" between the business transaction and the claim.  Agency
Rent A Car Sys., Inc. v. Grand Rent A Car Corp., 98 F.3d 25, 31
(2d Cir. 1996).  Accordingly, even a single, purposeful action
directed at New York will be sufficient to confer personal
jurisdiction over a defendant not physically present in New York,
so long as that action bears a substantial relationship to the
cause of action.  Corporate Campaign, Inc. v. Local 7837, United
Paperworkers Int'l Union, 697 N.Y.S.2d 37, 39 (1st Dep't 1999).

With respect to C.P.L.R. § 302(a)(1), Judge Sweet of
this Court has identified a range of situations involving a
defendant's use of the internet to transact business in New York:

> At one end are cases where the defendant
> makes information available on what is
> essentially a "passive" web site.  This use
> of the internet has been analogized to an
> advertisement in a nationally-available
> magazine or newspaper, and does not without
> more justify the exercise of jurisdiction
> over the defendant.  At the other end of the
> spectrum are cases in which the defendant
> clearly does business over the internet, such
> as where it knowingly and repeatedly
> transmits computer files to customers in
> other states.  Finally, occupying the middle
> ground are cases in which the defendant
> maintains an interactive web site which
> permits the exchange of information between
> users in another state and the defendant,
> which depending on the level and nature of
> the exchange may be a basis for jurisdiction.

Citigroup Inc. v. City Holding Co., 97 F. Supp. 2d 549, 565
(S.D.N.Y. 2000) (citations omitted); see also Student Advantage,
Inc. v. Int'l Student Exch. Cards, Inc., No. 00 Civ. 1971 (AGS),
2000 WL 1290585, at **3-4 (S.D.N.Y. Sept. 13, 2000).

Therefore, passive websites that are not commercial in
nature -- for example, those that do not permit the purchase of
products online -- are insufficient to confer jurisdiction under
§ 302(a)(1).  See, e.g., Molozanov v. Quantum Telecomms. Ltd.,
No. 05 Civ. 5270 (NRB), 2006 WL 897206, at *5 n.11 (S.D.N.Y. Apr.
6, 2006) ("Although in some instances a defendant's contacts with
New York via the internet can provide a basis for jurisdiction
under CPLR § 302(a)(1) . . . this would not hold true here, as
this case involves at most the publishing of a statement on a
passive website").  Active websites used by New York consumers to
purchase an out-of-state defendant's products, on the other hand,
generally confer personal jurisdiction.  See New Angle Pet
Prods., Inc. v. MacWillie's Golf Prod., Inc., No. 06 Civ. 1171

- 9 -

(DRH), 2007 WL 1871345, at *3 (E.D.N.Y. June 28, 2007); Student Advantage, 2000 WL 1290585, at *4; Hsin Ten Enter. USA, Inc. v. Clark Enters., 138 F. Supp. 2d 449, 456 (S.D.N.Y. 2000) ("Generally, an interactive website supports a finding of personal jurisdiction over the defendant.").

### b.    New York C.P.L.R. § 302(a)(3)(ii)

Under C.P.L.R. § 302(a)(3)(ii), a court in New York may exercise jurisdiction over a non-domiciliary when the defendant (1) committed a tortious act outside New York, (2) that causes injury within New York State, and (3) the defendant expects or should reasonably expect the act to have consequences in the state and (4) derives substantial revenue from interstate or international commerce. See N.Y. C.P.L.R. § 302(a)(3) (McKinney 2006); Darby Trading Inc. v. Shell Int'l Trading & Shipping Co., No. 07 Civ. 0400 (KMK), 2008 WL 852787, at *5 (S.D.N.Y. Mar. 31, 2008).

### i.    Tortious Act Outside of New York

"As to the tortious act requirement, the out-of-state act must be the proximate cause of the injury in New York, i.e., the act must be 'so close to the injury that reasonable people would regard it as a cause of the injury.'" Tri-Coastal Design Group, Inc. v. Merestone Merchandise, Inc., No. 05 Civ. 10633 (HB), 2006 WL 1167864, at *4 (S.D.N.Y. May 03, 2006) (quoting Art Leather Mfg. Co., Inc. v. Albumx Corp., 888 F. Supp. 565, 568 (S.D.N.Y. 1995)).

- 10 -

As the Citigroup court explained,

> the mere creation and maintenance of web
> sites bearing infringing marks does not
> constitute a tort in any state where the
> sites can be viewed.  Thus, to the extent
> that the web sites at issue are simply
> capable of being viewed in New York, without
> more, any tortious activity must be deemed to
> have occurred outside of New York.

Citigroup, 97 F. Supp. 2d at 568.  Rather, in trademark
infringement cases, the tort occurs "'where the passing off
occurs,' that is, where the customer purchases the defendant's
goods in the mistaken belief that they are the trademark owner's
products."  Tri-Coastal Design Group, 2006 WL 1167864, at *4
(quoting Aerogroup Int'l, Inc. v. Marlboro Footworks, Ltd., 956
F. Supp 427, 433 (S.D.N.Y. 1996)).

## ii.  Injury Caused in New York

It is firmly established that the domicile or residence
of an injured party within New York is not enough to establish
personal jurisdiction -- rather, a more direct injury must have
occurred within New York State.  Fantis Foods, Inc. v. Standard
Importing Co., 425 N.Y.S.2d 783, 787 (1980); see also Am.
Network, Inc. v. Access Am./Connect Atlanta, Inc., 975 F. Supp.
494, 497 (S.D.N.Y. 1997).  This element has long been interpreted
to include "harm to a business in the New York market through
lost sales or lost customers."  Am. Network, 975 F. Supp. at 497;
see Register.Com, Inc. v. Domain Registry of Am., Inc., No. 02
Civ. 6915 (NRB), 2002 WL 31894625, at *7 (S.D.N.Y. Dec. 27,
2002).  Furthermore, in trademark infringement cases, the injury
requirement is satisfied by harm and threatened harm resulting

- 11 -

from actual or potential confusion and deception of internet
users in New York State. Pitbull Prods., Inc. v. Universal
Netmedia, Inc., No. 07 Civ. 1784 (RMB), 2008 WL 1700196, at *7
(S.D.N.Y. Apr. 04, 2008).

### iii. **Defendant Reasonably Expects Consequences**

An objective test -- and not a subjective test --
governs whether a defendant expects or should reasonably expect
his act to have consequences within New York. Kernan, 175 F.3d
at 241. The mere "likelihood or foreseeability that a
defendant's product will find its way into New York" is alone
insufficient to satisfy § 302(a)(3)(ii). Id. (citations and
quotations omitted). "[F]oreseeability must be coupled with
evidence of a purposeful New York affiliation, for example, a
discernible effort to directly or indirectly serve the New York
market." Schaadt v. T.W. Kutter, Inc., 564 N.Y.S.2d 865, 866 (3d
Dep't 1991). A court must assess whether defendant purposefully
availed himself of the benefits of the laws of New York, to the
extent that he would reasonably anticipate being haled into a New
York court. Kernan, 175 F.3d at 241. New York courts will
assess whether the facts demonstrate that defendant should have
been aware that its product would enter the New York market.
Foot Locker Retail, Inc. v. SBH, Inc., No. 03 Civ. 5050 (DAB),
2005 WL 91306, at *4 (S.D.N.Y. Jan. 18, 2005).

### iv. **Derives Substantial Revenue from Interstate Commerce**

There is no bright-line rule regarding when a specific
level of revenue becomes substantial for purposes of

302(a)(3)(ii). Light v. Taylor, No. 05 Civ. 5003 (WHP), 2007 WL
274798, at *4 (S.D.N.Y. Jan. 29, 2007); see City of New York v.
A-1 Jewelry & Pawn, Inc., 501 F. Supp. 2d 369, 417 (E.D.N.Y.
2007). Courts will instead assess either (1) the percentage of a
party's overall revenue derived from interstate commerce, or (2)
the absolute revenue generated by a defendant's interstate
commerce activities. Light, 2007 WL 274798, at *4. Each case
will, however, be decided on its own unique set of facts. Id.
"Irrespective of the approach chosen, the main concern is the
overall nature of the defendant's business and the extent to
which he can fairly be expected to defend lawsuits in foreign
forums." Id. (internal quotations and citations omitted).

Additionally, dismissal for lack of personal
jurisdiction is inappropriate under 302(a)(3)(ii) "even where
there is no proof that a defendant derives substantial revenue
from interstate or international commerce, where that knowledge
is peculiarly under the control of [the defendant], and may come
to light in the course of [s]ubsequent discovery." Mfg. Tech.,
Inc. v. Kroger Co., No. 06 Civ. 3010 (JSR), 2006 WL 3714445, at
*3 (S.D.N.Y. Dec. 31, 2006) (internal quotation omitted)
(alterations in original); A-1 Jewelry & Pawn, Inc., 501 F. Supp.
2d at 418.

## 2.   Due Process

Due process requires that a non-resident defendant have
minimum contacts with the forum state, such that traditional
notions of fair play and substantial justice are not offended by
maintaining a suit against him. Calder v. Jones, 465 U.S. 783,

788 (1984); see U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping
Co., 241 F.3d 135, 152 (2d Cir. 2001). "[O]nly pre-litigation
contacts are relevant to the jurisdictional question." ISI
Brands, Inc. v. KCC Int'l, Inc., 458 F. Supp. 2d 81, 88 (E.D.N.Y.
2006) (internal quotation omitted).

         While the Supreme Court has concluded that courts may
only assert personal jurisdiction over non-domiciliaries who have
sufficient minimum contacts, see, e.g., Int'l Shoe Co. v. State
of Washington, 355 U.S. 220 (1957), C.P.L.R. § 302 does not sweep
so widely. Rather, the statute seeks merely to obtain personal
jurisdiction over non-domiciliaries where the cause of action
arises out of activity conducted with the state. United States
v. Montreal Trust Co., 358 F.2d 239, 242 (2d Cir. 1966).
Therefore, as a practical matter, the Due Process Clause permits
the exercise of jurisdiction in a broader range of circumstances
of N.Y. C.P.L.R. § 302, and a foreign defendant meeting the
standards of § 302 will satisfy the due process standard. See
id. (exercise of personal jurisdiction under New York's long-arm
statute does not present constitutional issues because it is
narrower than Due Process Clause).

## B.    **Personal Jurisdiction Can Be Exercised over Defendants**

         I conclude that personal jurisdiction can be exercised
over defendants under both New York C.P.L.R. § 302(a)(1) and §
302(a)(3)(ii).

- 14 -

## 1.   C.P.L.R. § 302(a)(1)

Personal jurisdiction is proper under C.P.L.R. § 302(a)(1) because defendants have transacted business within New York and the causes of action arise from that business.

First, Glacéau has demonstrated that defendants sold Spiritual Water directly to New Yorkers over an active commercial website on at least a dozen occasions, using defendants' own sales records and the investigatory materials submitted by counsel's private investigator. The fact that there were only roughly a dozen sales certainly does not preclude the exercise of personal jurisdiction, as "[e]ven one instance of purposeful activity directed at New York is sufficient to create jurisdiction." Corporate Campaign, 697 N.Y.S.2d at 39. Furthermore, defendants' website sales required the exchange of billing, shipping, and contact information for the sales to New York consumers to be consummated, indicating the "active" nature of the commercial website.

Case law clearly demonstrates that under these circumstances, defendants have purposely availed themselves of the privilege of conducting activities in New York, and the first prong of C.P.L.R. § 302(a)(1) is met. See Cenage Learning, Inc. v. Buckeye Books, 531 F. Supp. 2d 596, 599 (S.D.N.Y. 2008) (jurisdiction over defendant exists "by virtue of its alleged [internet] sales of infringing and unauthorized foreign edition textbooks to the defendants in New York and its shipment of nine of those textbooks into New York"); New Angle Pet Prods., 2007 WL

1871345, at *3 (personal jurisdiction proper where defendant's website allowed viewers to purchase product online by providing payment, shipping information, contact information); Rubin v. City of New York, No. 06 Civ. 6524 (HB), 2007 WL 950088, at *3 (S.D.N.Y. Mar. 29, 2007) (with respect to counterclaim, where plaintiff "transacted business with New York residents over an 'active' website where customers from New York purchased allegedly infringing merchandise" in trademark case, the court had personal jurisdiction); Alpha Int'l, Inc. v. T-Reproductions, Inc., No. 02 Civ. 9586 (SAS), 2003 WL 21511957, at *3 (S.D.N.Y. July 1, 2003) (personal jurisdiction over defendant proper where it sold "at least one accused product to a New York resident through its website"); Mattel, Inc. v. Adventure Apparel, No. 00 Civ. 4085 (RWS), 2001 WL 286728, at *3 (S.D.N.Y. Mar. 22, 2001) (where a private investigator in New York ordered allegedly infringing merchandise from defendant's website and the merchandise was sent to New York, defendant was transacting business within the meaning of C.P.L.R. § 302(a)(1)); Hsin Ten, 138 F. Supp. 2d at 456 (district court had personal jurisdiction over defendant where website allowed consumers to purchase products, communicate with defendant's representatives, and download materials).

The second prong is also met. The internet sales of Spiritual Water bear a substantial nexus to the claim because plaintiff alleges that those sales were potentially diverted from it as a result of consumer confusion and the products sold in New York bore the trade dress at issue.

Defendants argue that their website is of a commercial nature, but is not "active" in its current form because it does not permit consumers to place orders or email questions. Defendants have, however, already conceded that consumers in New York were permitted to -- and in fact did -- place orders over the internet from October to December 2007, which is inclusive of the date that this action was filed. The fact that defendants changed their website after the complaint was filed to remove any elements that support a finding of personal jurisdiction is inconsequential.

Defendants cite ISI Brands, Inc. v. KCC International, Inc., 458 F. Supp. 2d 81 (E.D.N.Y. 2006), for the proposition that the activities conducted through their website do not make them subject to personal jurisdiction pursuant to C.P.L.R. § 302(a)(1). Defendants' reliance on the ISI Brands case is wholly misplaced. The ISI Brands court concluded that there was no personal jurisdiction over defendant, in part, because the two sales made to New York residents via the website at issue in that case were irrelevant to its personal jurisdiction analysis, as they were (1) both made by plaintiff's representative in furtherance of the litigation, (2) were made only after the complaint was filed, and (3) these were the only sales alleged to have been made to individuals in New York. See ISI Brands, 458 F. Supp. 2d at 88 ("[O]nly pre-litigation contacts are relevant to the jurisdictional question." (internal quotation omitted)).

The website at issue in this case is clearly interactive:  at the time the action was commenced, consumers in

- 17 -

New York could -- and did -- purchase Spiritual Water that was delivered to them in New York. Defendants fail to recognize the central principal advanced by the district court in ISI Brands: that "the existence of an interactive 'patently commercial' website that can be accessed by New York residents is not sufficient to justify the exercise of personal jurisdiction unless some degree of commercial activity occurred in New York." Id. at 87-88 (emphasis added). This is exactly the case here.

Furthermore, the fact that plaintiff's investigator placed an order has different significance in this case, as plaintiff does not argue this sale provides the sole basis for personal jurisdiction. Rather, the other fourteen sales do. Plus, the investigator's order was placed prior to the filing of this action.

Accordingly, defendants' internet sales to New York consumers provide ample basis for the exercise of long-arm jurisdiction pursuant to § 302(a)(1).

### 2. C.P.L.R. § 302(a)(3)(ii)

C.P.L.R. § 302(a)(3)(ii) provides a second, independent basis for exercising long-arm jurisdiction over defendants. Plaintiff has made a prima facie showing that (1) defendants committed a tortious act outside New York, (2) that caused injury within New York State, (3) defendants expected or should reasonably have expected the act to have consequences in New York, and (4) they derived substantial revenue from interstate commerce. Each element is discussed in turn.

### a.    Tortious Act Outside of New York

Glacéau argues that defendants' infringement and
dilution constitute tortious activity under C.P.L.R. §
302(a)(3)(ii).  "Trademark infringement can be a 'tort' for [the]
purpose of determining long-arm jurisdiction."  PDK Labs, Inc. v.
Proactive Labs, Inc., 325 F. Supp. 2d 176, 180 (E.D.N.Y. 2004)
(citation and internal quotations omitted).  Here, the allegedly
infringing goods were passed off in New York State to the
consumers who purchased them on defendants' website.
Accordingly, Glacéau has met the first prong of the test.  See
Ivoclar Vivadent, Inc. v. Ultident, Inc., No. 04 Civ. 0984 (SC),
2005 WL 1421805, at *4 (W.D.N.Y. June 15, 2005) (plaintiff's
allegations that "defendant's sale and shipment of the Products
infringes on plaintiff's trademarks, threatens the distinctive
quality of plaintiff's trademark, confuses plaintiff's customers
and threatens plaintiff's reputation . . . amount to a tortious
act resulting in an injury in New York -- the place where
plaintiff, the trademark owner, resides and conducts business --
and meets the first two requirements of CPLR § 302(a)(3).")

### b.    Injury Caused in New York

The "injury within the state" prong is also satisfied.
The sales of Spiritual Water to New York consumers through
defendants' website, and not the mere existence of defendants'
website or the presence of plaintiff in New York, give rise to
Glacéau's alleged lost sales and customers.  Defendants' goods
were purportedly passed off and sold to New Yorkers who were

- 19 -

actually or potentially confused as to their origin.  See
Tri-Coastal Design Group, 2006 WL 1167864, at *4 (concluding that
plaintiff's allegation "that infringing sales were made in New
York is legally sufficient to satisfy the requirement of 'injury
to person or property within the state.'"); Savage Universal
Corp. v. Grazier Constr., Inc., No. 04 Civ. 1089 (GEL), 2004 WL
1824102, at *9 (S.D.N.Y. Aug. 13, 2004) (injury from tortious
infringement can include damage to goodwill and lost sales or
customers).

        Glacéau also persuasively argues that its actual or
potential New York customers were confused or deceived merely by
viewing images of Spiritual Water products on defendants'
website.  This lends further support to a finding of injury
within the state.  Am. Network, 975 F. Supp. at 497 (injury
within the state prong is met by plaintiff's claims of harm in
the New York market resulting from the confusion of New York
computer users who viewed infringing mark on defendant's
website); see also Citigroup, 97 F. Supp. 2d at 568 (plaintiff's
claim that "its actual and potential customers in New York are
confused or deceived when they view and interact with the City
National web sites" is sufficient).

### c.   Defendant Reasonably Expects Consequences

        Several factors should have alerted defendants that
their Spiritual Water products would enter the New York market.
Therefore, this prong of the test is met.

        First, as in Citigroup, "it was reasonably foreseeable
that publication of web sites with the offending marks would have

consequences in New York." Citigroup, 97 F. Supp. 2d at 568; see New Angle Pet Prods., 2007 WL 1871345, at *3 (concluding that "there is an 'articulable nexus' between Plaintiff's claims of false advertising and Defendant's on-line internet business because the alleged false advertising was displayed on Defendant's websites where the on-line orders were submitted").

Second, defendants filled orders with delivery addresses in New York. Third, the customer testimonial section of the website demonstrates that customers encountered the products first hand in New York. Fourth, the references on defendants' website to press articles about the product that ran in New York -- notably a New York Times article published about Spiritual Water -- further supports the conclusion that defendants could reasonably expect their actions would be consequential in New York.

Finally, the fact that the defendants' website advertises an event "coming soon" to New York adds support to the finding of jurisdiction, as this would specifically attract New York consumers to purchase their products. Am. Network, 975 F. Supp. at 498 (statement on website that defendant could help customers "across the U.S." supported the exercise of long-arm jurisdiction).

## d. Derives Substantial Revenue from Interstate Commerce

While defendants' sales in New York may appear de minimis at first blush, this does not defeat jurisdiction.

Defendants have not submitted any evidence whatsoever of their profits from interstate commerce, despite the fact that Glacéau requested the information. The sales to New Yorkers that were disclosed were not supported with any documentation other than a simple spreadsheet that appears to have been created by defendants solely for this motion. The document omits the sale made to Aglione in New York. This gives weight to plaintiff's contention that defendants have not been forthcoming regarding their sales in New York. Plaintiff is entitled to discovery to determine whether there were any other sales in New York.

As previously noted, dismissal for lack of personal jurisdiction is inappropriate under § 302(a)(3) "even where there is no proof that a defendant 'derives substantial revenue from interstate or international commerce,' where that knowledge is peculiarly under the control of [the defendant].'" Mfg. Tech., 2006 WL 3714445, at *3 (internal quotations omitted) (alteration in original). Such is the case here. I therefore conclude that the revenue of $158.53 earned from sales in New York is sufficiently substantial in light of the circumstances.

Defendants argue that the majority of their sales come from Florida, and are therefore local in nature. This is unpersuasive in light of the fact that (1) the Spiritual Brands website itself characterizes the Spiritual Water product as "sold in the United States" -- not only Florida (see Parnass Decl. Ex. A), and (2) defendants fail to provide meaningful documentation.

## C.   Request for Sanctions and Costs

I turn to Glacéau's request for sanctions against defendants, including fees and costs, for pursuing a baseless motion after admitting that the facts show they had sales in New York.  For the following reasons, Glacéau's request for sanctions is denied.

A district court may sanction an attorney or a party pursuant to its inherent power to manage its own affairs. Chambers v. NASCO, Inc., 501 U.S. 32, 43-44 (1991).  This inherent power includes the ability "to fashion an appropriate sanction for conduct which abuses the judicial process," id. at 44-45, such as the assessment of attorneys' fees against "a party [that] has acted in bad faith, vexatiously, wantonly, or for oppressive reasons," id. at 45-46 (internal quotation omitted). To impose sanctions pursuant to the court's inherent powers in the Second Circuit, "a court must find clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith -- that is, motivated by improper purposes such as harassment or delay."  Eisemann v. Greene, 204 F.3d 393, 396 (2d Cir. 2000) (internal quotation omitted); see Dux S.A. v. Megasol Cosmetic GMBH, No. 03 Civ. 8820 (RO), 2006 WL 44007, at *2 (S.D.N.Y. Jan. 9, 2006).  A claim is colorable "when it has some legal and factual support, considered in light of the reasonable beliefs of the individual making the claim."  Nemeroff v. Abelson, 620 F.2d 339, 348 (2d Cir. 1980).

- 23 -

Sanctions imposed pursuant to the court's inherent power may be made against the losing party or against the losing party's attorneys, or both. Dux S.A., 2006 WL 44007, at *2.

The Second Circuit has "interpreted the bad faith standard restrictively." Eisemann, 204 F.3d at 396.

> To ensure . . . that fear of an award of attorneys' fees against them will not deter persons with colorable claims from pursuing those claims, [the Second Circuit has] declined to uphold awards under the bad-faith exception absent both clear evidence that the challenged actions are entirely without color, and are taken for reasons of harassment or delay or for other improper purposes and a high degree of specificity in the factual findings of the lower courts.

Dow Chem. Pac. Ltd. v. Rascator Maritime S.A., 782 F.2d 329, 344 (2d Cir. 1986) (internal citations and quotations omitted).

Plaintiff's request for sanctions is denied, for plaintiff has not clearly shown that defendants acted in bad faith. The fact that defendants' motion wholly lacks merit is not enough, by itself, to prove bad faith. See Eisemann 204 F.3d at 397 (concluding the district court's conclusion of bad faith based almost entirely on motion's lack of merit was insufficient in light of lack of factual specificity).

## CONCLUSION

Defendants' motion to dismiss for lack of personal jurisdiction is denied, and plaintiff's request for sanctions is denied as well. The parties shall proceed with discovery. All discovery, both fact and expert, shall be completed by October

- 24 -

17, 2008.   The Court will hold a pre-trial conference on October

17, 2008 at 10:00 a.m., in Courtroom 11A.

      SO ORDERED.

Dated:    New York, New York
         July 16, 2008

                                    DENNY CHIN
                                  United States District Judge