UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| ENERGY BRANDS INC. d/b/a GLACÉAU, | : | 07 Civ. 10644 (DC) |
| | : | |
| Plaintiff, | : | |
| | : | **DECLARATION OF S. ZEV** |
| v. | : | **PARNASS IN SUPPORT OF** |
| | : | **PLAINTIFF'S APPLICATION** |
| SPIRITUAL BRANDS, INC. and ELICKO | : | **FOR ENTRY OF DEFAULT** |
| TAIEB, | : | |
| | : | |
| Defendants. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

S. ZEV PARNASS hereby declares as follows:

1.      I am a member of the Bar of this Court and am associated with the law firm of Debevoise & Plimpton LLP, attorneys for the Plaintiff in the above-entitled action.  I am familiar with the facts and circumstances in this action.

2.      I submit this declaration in support of Plaintiff's application for entry of default against Defendants Spiritual Brands, Inc., a corporation, and Elicko Taieb, an individual who is not an infant, in the military or an incompetent person (collectively, "Defendants"), pursuant to Rule 55(a) of the Federal Rules of Civil Procedure and Civil Rule 55.1 of the Local Rules of the United States District Court for the Southern District of New York.

3.      This action was commenced by the filing of a Complaint on November 28, 2007 alleging trade dress infringement and false designation of origin, trade dress dilution, deceptive acts and practices and unfair competition.  A copy of the Complaint (without exhibits) is attached hereto as Exhibit 1.

4.      This Court has jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332 and 1338.  This Court has supplemental jurisdiction over all other claims asserted under 28 U.S.C. § 1367.  This Court has personal jurisdiction over Defendants pursuant to C.P.L.R. § 302(a)(1) and § 302(a)(3)(ii).

5.      On November 28, 2007, the Clerk of this Court issued a Summons for each Defendant.  The Complaint was served on defendant Taieb on December 3, 2007 (and again on December 19, 2007) and on defendant Spiritual Brands, Inc. on December 19, 2007.  The December 19, 2007 service on both Defendants was effected by serving the Complaint on Defendants' previous counsel pursuant to an agreement by such counsel to accept service on behalf of Defendants.  Copies of the Summonses and the Returns of Service, filed with this Court on January 4, 2008, are attached hereto as Exhibits 2 and 3.

6.      On May 2, 2008, Defendants filed a Motion to Dismiss the Complaint.  On May 16, 2008, Plaintiff opposed the Motion.  On July 16, 2008, the Court denied Defendants' Motion to Dismiss.  *See* Exhibit 4.  That decision was entered on July 17, 2008.  *See* Exhibit 5.  Under Federal Rule of Civil Procedure 12(a)(4), Defendants' answer would have been due no later than July 31, 2008, which was ten days after notice of the Court's action.

7.      By the close of business on August 1, 2008, no answer had been received from Defendants.  Plaintiff has not agreed to, nor have Defendants requested, any extension of time to respond.

8.     Based on Defendants' failure to respond to the Complaint filed on

November 28, 2007, the Clerk of this Court should enter a default against Defendants

pursuant to Rule 55(a) of the Federal Rules of Civil Procedure.  *See* Exhibit 6.

I hereby declare, under penalty of perjury, that the foregoing is true and correct.

Dated:  August 3, 2008
        New York, New York

<u>/s/ S. Zev Parnass</u>
S. Zev Parnass

# EXHIBIT 1

David H. Bernstein (DB 9564)  ELECTRONICALLY FILED
S. Zev Parnass (SP 3284)
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
(212) 909-6696 (telephone)
(212) 521-7696 (facsimile)

*Attorneys for Plaintiff Energy Brands Inc. d/b/a Glacéau*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
ENERGY BRANDS INC. d/b/a GLACÉAU,          :
                                            :
              Plaintiff,                     :
                                            :          07 Civ. 10644 (LTS)
       v.                                   :
                                            :          **COMPLAINT AND DEMAND**
SPIRITUAL BRANDS, INC. and ELICKO          :          **FOR JURY TRIAL**
TAIEB,                                      :
                                            :
              Defendants.                   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

        Energy Brands Inc. d/b/a Glacéau ("Glacéau"), by its attorneys, Debevoise &

Plimpton LLP, for its complaint, alleges as follows:

## NATURE OF THE ACTION

        1.      This is an action for trade dress infringement, false designation of origin,

trade dress dilution, deceptive acts and practices, and unfair competition arising out of the

recent launch of a new purified bottled water product, **spiritual**water, by Spiritual

Brands, Inc. ("Spiritual Brands") and its principal Elicko Taieb ("Taieb" or "Mr. Taieb")

(collectively, "Defendants").

        2.      Within the last several weeks, Defendants have embarked on an unlawful

campaign to lure consumers into purchasing **spiritual**water in the mistaken belief that it

comes from, is sponsored or licensed by, or is associated or affiliated with, the

**smart**water brand, Glacéau's well-known electrolyte-enhanced water product.  The

lynchpin of Defendants' campaign is the packaging of the **spiritual**water product, which

mimics several key elements of the well-known and distinctive **smart**water trade dress.

      3.     As shown in the below pictures, the trade dress for **spiritual**water mimics

so many key elements of the unique, distinctive **smart**water trade dress that it cannot be

the result of sheer coincidence.

 

The similarities include: (<u>i</u>) a similarly-shaped, tall, narrow, cylindrical clear plastic

bottle; (<u>ii</u>) a similar vertical presentation of the brand name; (<u>iii</u>) the brand name written

in lower case letters with the first word in bold letters and the word "water" in non-

emphasized letters; and (<u>iv</u>) a clear/white (light) cap.

      4.     Furthermore, four of the five names Defendants selected for

**spiritual**water's different SKUs -- "Balance," "Defense," "Focus" and "Formula J'" --

are virtually identical to some of Glacéau's most popular flavors of **vitamin**water

(Glacéau's other principal product):  "Balance," "Defense," "Focus" and "Formula 50."

Defendants also have announced that additional flavors, such as "Power," "Essential,"

"Energy" and "Refresh," will be sold beginning on December 3, 2007.  These SKUs, too,

are virtually identical to some of Glacéau's most popular flavors of **vitamin**water:

"Power-C," "Essential," "Energy" and "Revive."

     5.     Although the religious imagery on some **spiritual**water bottles

shown on Defendants' website, www.spiritualh2o.com (see the adjacent

image), is different from the cloud imagery on **smart**water bottles, consumers

seeing the line of **spiritual**water products will, because of the similar trade

dress and product names, mistakenly believe that it comes from, is sponsored

or licensed by, or is associated or affiliated with, Glacéau, the producer of

**smart**water.  That confusion is exacerbated by the advertising for

**spiritual**water on Defendants' website, business card and promotional

calendar, which feature the **spiritual**water name on the bottle without any imagery, as

shown below (juxtaposed next to a bottle of **smart**water) and in the attached Exhibits A-

C.




6.    Defendants' unlawful conduct is causing and will continue to cause serious and irreparable harm to Glacéau.  This conduct, if not enjoined, will eviscerate the goodwill Glacéau has spent more than ten years carefully cultivating for its **smart**water brand.

### THE PARTIES

7.    Glacéau is a corporation organized and existing under the laws of the State of New York with its principal place of business located at 17-20 Whitestone Expressway, Whitestone, New York 11357.

8.    Upon information and belief, Defendant Spiritual Brands is a corporation organized and existing under the laws of the State of Florida with its principal place of business located at 4301 South Flamingo Road #103-204, Davie, Florida 33330.

9.    Upon information and belief, Defendant Taieb is a Florida domiciliary residing at 13191 NW 11th Court, Sunrise, Florida 33323.

## JURISDICTION AND VENUE

10.     This Court has original jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332 and 1338 and has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  The amount in controversy is in excess of $75,000, exclusive of interest and costs.

11.     This Court has personal jurisdiction over Defendants pursuant to N.Y. Civ. Prac. L. & R. §§ 301 & 302(a).  Upon information and belief, Defendants regularly have solicited business in the State of New York and in this District via the Internet, have transacted and done business in the State of New York and in this District, have wrongfully caused injury to Glacéau in the State of New York and in this District, such injury being reasonably foreseeable, and derive substantial revenue from interstate commerce.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this action occurred in this District.  Venue over Defendant Spiritual Brands also is proper in this District pursuant to 28 U.S.C. § 1391(c) because it is deemed to reside in this District.

## SMARTWATER AND ITS TRADE DRESS

13.     Glacéau pioneered the enhanced water category when it launched the **smart**water brand in 1996, a high-quality, vapor-distilled bottled water enhanced with electrolytes, with a unique and distinctive packaging that would make it distinguishable from the sea of typical bottled waters.

14.     In just over ten years, the **smart**water brand has achieved critical renown, including in the industry, the press, and among consumers.  It also has enjoyed a

consistently high level of commercial success.  Notwithstanding the addition of other competitors in this category, the **smart**water brand remains the recognized leader in the electrolyte-enhanced bottled water category.

15.    The trade dress of **smart**water is one of the most important ways in which consumers identify the brand on the shelf or in the hands of celebrities and other consumers, and it thus is among Glacéau's most valuable intellectual property rights.  To create a distinctive look for the product, Glacéau enlisted the assistance of a designer named Douglas Lloyd, who was well-known for work he had done with, among others, Gucci and The Gap.  Together, Lloyd and Glacéau created a unique packaging for the **smart**water product.  In January 2006, Glacéau slightly refreshed the trade dress to update the packaging while still maintaining the same overall visual impression and preserving all of the core brand-identifying elements.

16.    **smart**water's success has been based largely on its trade dress and the clean, bold, modern image that the trade dress conveys.

17.    The key elements of this distinctive trade dress include: (i) a bullet-shaped, tall, narrow, cylindrical clear plastic bottle; (ii) a vertical presentation of the brand name; (iii) the brand name written in lower case letters with the first word in bold letters and the word "water" in non-emphasized letters; and (iv) a clear (light) cap.

18.    The **smart**water trade dress has received unsolicited, positive attention from the popular and industry media.  For example:

- The February 1, 2000 issue of *Beverage Industry* noted that the package design is "one of the biggest assets" of **smart**water products (as well as other Glacéau products).

- The November 13, 2000 issue of *BRANDWEEK* described the **smart**water packaging as "striking."

- The July 1, 2003 cover story in *Beverage Industry* magazine praised the **smart**water trade dress for its "catchy labels with minimalist colors."

- On April 18, 2006, the *Gourmet Retailer* website posted an entry which noted **smart**water's "slender silhouette" and praised its "fresh look, and arresting on-shelf presence."

19. The **smart**water bottle label is registered on the Principal Register of the United States Patent and Trademark Office under Registration No. 2,840,063 (under GLACÉAU SMARTWATER and Design). *See* Exhibit D.

**<u>SMARTWATER'S ADVERTISING AND MARKETING</u>**

20. Glacéau's "grassroots" marketing strategy for the **smart**water brand trades heavily off of the distinctive and recognizable **smart**water trade dress.

21. As part of this grassroots marketing approach, Glacéau has invested in events marketing, including at such desirable venues as the 2006 Daytime Emmy Awards, the 2006 Sundance Film Festival, the 2005 Revlon Run Walk and the 2005 MTV Video Music Awards. Glacéau also makes **smart**water products available at smaller, targeted events such as local road races or art gallery openings. In addition, Glacéau invests in product placements for **smart**water in television shows such as *CSI*, *Scrubs*, *Grey's Anatomy* and *The Today Show*.

22. **smart**water products are often sold using point of sale devices, such as individualized display cases or coolers. All of the point of sale materials include elements designed to be evocative of the **smart**water trade dress. In addition to point of sale materials, Glacéau has a substantial print advertising campaign which prominently features the **smart**water trade dress. The **smart**water trade dress also appears on

Glacéau's Fleet Graphics delivery trucks, approximately 300 of which are on the road each day.

23.    All of these strategies work only if consumers later recognize **smart**water products when they go to a store to purchase them or when they describe the products to others.  The nature of the trade dress supports these strategies because, even from far away, the product is recognizable from its distinctive trade dress as a **smart**water product.

24.    For example, shortly after Apple's CEO Steve Jobs delivered a keynote address while drinking **smart**water, a blogger on the Mac website *MacRumors: Forum* inquired as to what was the "pretty distinctive brand of water" that Mr. Jobs was drinking.  A number of bloggers responded that it was **smart**water, which prompted discussion about the product and where they could get it.  One person even responded "Its hard to imagine a more industrial design water bottle than that … I think next time I see it ill [sic] pick it up, and tell everyone im [sic] drinking the water steve jobs uses." *See* <http://forums.macrumors.com/showthread.php?t=176903>.

25.    In 2006, Glacéau spent nearly $2.4 million advertising and promoting the **smart**water brand.

26.    In 2007, Glacéau launched a major advertising campaign for **smart**water featuring the film and television star Jennifer Aniston.  This is the largest **smart**water ad campaign in Glacéau's history, costing over $13.1 million.

27.    Glacéau also recently signed New England Patriots quarterback Tom Brady to endorse the **smart**water brand in a campaign that will consist of print, outdoor, Internet and television advertisements and cost an estimated $5 million.

## SALES OF SMARTWATER

28.    **smart**water beverages have enjoyed exponential sales growth since their introduction in 1996.  In 2006 alone, Glacéau's retail revenues from **smart**water beverages exceeded $75.6 million, representing the sale of nearly 56 million bottles.  In 2007, Glacéau expects revenues of more than $149 million from sales of more than 111 million bottles.

## DEFENDANTS' BAD FAITH

29.    Defendants' bad faith in developing the **spiritual**water trade dress is evident both from an examination of Defendants' business practices and the trade dress used on third parties' water products.

30.    Upon information and belief, Defendant Taieb operates or is affiliated with numerous pornographic websites and businesses.  One of these businesses, Movixo, Inc. d/b/a movixo.com ("Movixo"), apparently rents pirated, low-quality copies of pornographic videos.  Zero Tolerance Entertainment filed a multi-million dollar lawsuit against Movixo in 2006 alleging copyright and trademark infringement.

31.    Glacéau cannot tolerate the potential tarnishment that could attach if **spiritual**water products are confused with **smart**water, and if consumers were to link these brands with Mr. Taieb's pornographic businesses.  Moreover, the fact that Mr. Taieb has been involved in trademark disputes in the past suggests that he is well familiar with trademark protection and infringement, and thus that he adopted the trade dress for the **spiritual**water product, and the product names for its different SKUs, in bad faith.

32.    Defendants' conduct is all the more culpable when measured against other entries in the bottled water category.  A survey of the trade dress used by these other

bottled water products shows the many, virtually limitless options available to companies that wish to enter this market:



33.     Thus, the similarity of **spiritual**water's trade dress to the **smart**water trade dress is all the more striking when viewed in light of this range of designs for other products in the category.

## LIKELIHOOD OF CONFUSION

34.     Given the striking similarity between the products' respective trade dresses, there is a high likelihood that consumers and retailers will buy the **spiritual**water product under the mistaken belief that it comes from, is sponsored or licensed by, or is associated or affiliated with, Glacéau, the makers of **smart**water.

35.     This likelihood of confusion is further exacerbated by the fact that bottled water is a relatively low-cost item (less than $2 per bottle).  Accordingly, consumers are unlikely to exercise a great deal of care before making a purchase.  Moreover, a recent article quoted Mr. Taieb as stating that **spiritual**water soon will be available in stores (it already is available on Defendants' website).  In that regard, bottled water is often an

impulse purchase and is placed in coolers near a store's checkout counter or at the end of aisles in grocery stores.

## IRREPARABLE HARM

36.     In developing and marketing its **spiritual**water product, Defendants have gone beyond fair competition and have adopted a trade dress that is likely to confuse consumers into thinking they are buying a product that comes from, is sponsored or licensed by, or is associated or affiliated with, Glacéau, the makers of **smart**water.

37.     As a result of Defendants' conduct, Glacéau will suffer irreparable harm. It may lose sales and revenues, as customers may mistakenly believe that **spiritual**water is Glacéau's foray into the religious realm, and may choose to buy this "special edition" of **smart**water in lieu of **smart**water itself.  Of even more concern is that other consumers may be offended by the religious messages and may abandon the Glacéau brand in its entirety.  And, even worse, if Mr. Taieb's **spiritual**water business is publicly linked with his other business of pirating pornographic movies, the obvious hypocrisy involved may forever taint **smart**water, causing harm from which the brand might never recover.

## GLACÉAU'S EFFORTS TO RESOLVE THIS DISPUTE

38.     Immediately upon learning of Defendants' conduct, Glacéau's outside counsel wrote a letter to Defendants objecting to the trade dress of its **spiritual**water product.  A copy of this October 31, 2007 letter is attached as Exhibit E.

39.     Defendants did not responded to that letter.  Accordingly, on November 7, 2007, Glacéau's outside counsel sent another letter to Defendants, demanding a response within five days.  *See* Exhibit F.

40.     In response, on November 15, counsel for Defendants sent a letter (dated November 13) stating that Defendants "may agree to undertake appropriate and necessary measures to ensure agreed compliance with [Glacéau's] request to effectuate the required changes in any promotional marketing," but refused to change the bottle's trade dress. *See* Exhibit G.  Accordingly, this action was initiated.

### COUNT I:  TRADE DRESS INFRINGEMENT AND FALSE DESIGNATION OF ORIGIN UNDER SECTION 43(a) OF THE LANHAM ACT

41.     Glacéau repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

42.     The trade dress of **smart**water is used in commerce, is non-functional, is inherently distinctive, and has acquired substantial secondary meaning in the marketplace.

43.     **spiritual**water, which is now being used in commerce, features a trade dress that is confusingly similar to the trade dress of **smart**water.  Defendants' manufacture, distribution, sale and promotion of **spiritual**water thus is likely to cause confusion and mistake and to deceive retailers and consumers as to the source, origin or sponsorship of their products.  Consumers seeing **spiritual**water in the marketplace likely will believe that it comes from, is sponsored or licensed by, or is associated or affiliated with, **smart**water.

44.     Defendants' acts of trade dress infringement and false designation of origin, unless restrained, will cause great and irreparable injury to Glacéau and to the business and goodwill represented by the **smart**water trade dress, in an amount that cannot be ascertained at this time, leaving Glacéau with no adequate remedy at law.

45.    Defendants' deceptive marketing and sales practices in connection with **spiritual**water in its present packaging constitutes infringement of the **smart**water trade dress and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

46.    By reason of the foregoing, Glacéau is entitled to injunctive relief against Defendants, restraining them from any further acts of trade dress infringement and false designation of origin and, after trial, recovery of any damages (to the extent calculable) proven to have been caused by reason of Defendants' aforesaid acts.

### COUNT II: TRADE DRESS DILUTION
### UNDER NEW YORK STATUTORY LAW

47.    Glacéau repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

48.    The trade dress of **smart**water is used in commerce, is non-functional, is inherently distinctive, and has acquired substantial secondary meaning in the marketplace.

49.    Defendants' manufacture, distribution, sale and promotion of **spiritual**water is likely to dilute and detract from the distinctiveness of the **smart**water trade dress.

50.    Defendants' acts of trade dress dilution, unless restrained, will cause great and irreparable injury to Glacéau and to the business and goodwill represented by the **smart**water trade dress, in an amount that cannot be ascertained at this time, leaving Glacéau with no adequate remedy at law.

51.    The acts of Defendants as described above constitute trade dress dilution in violation of N.Y. Gen. Bus. Law § 360-l.

### COUNT III: DECEPTIVE ACTS AND
### PRACTICES UNDER NEW YORK STATUTORY LAW

52.    Glacéau repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

53.    The acts of Defendants as described above constitute deceptive acts and practices in violation of N.Y. Gen. Bus. Law §§ 349-50.

### COUNT IV: UNFAIR COMPETITION
### UNDER NEW YORK COMMON LAW

54.    Glacéau repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

55.    The acts of Defendants as described above constitute unfair competition in violation of Glacéau's rights under New York State common law, as preserved by N.Y. Gen. Bus. Law § 360-o.

### PRAYER FOR RELIEF

WHEREFORE, Glacéau respectfully prays:

A.    That Defendants and all those acting in concert or participation with them (including, but not limited to, their officers, directors, agents, servants, wholesalers, distributors, retailers, employees, representatives, attorneys, subsidiaries, related companies, successors, assigns and contracting parties) be temporarily, preliminarily and then permanently enjoined and restrained from:

i.    manufacturing, distributing, shipping, advertising, marketing, promoting, selling or otherwise offering for sale **spiritual**water

14

in its present trade dress or any other trade dress that is confusingly similar to that of **smart**water; and

    ii.    representing, by any means whatsoever, that any products manufactured, distributed, advertised, offered or sold by Defendants are Glacéau's products or vice versa, and from otherwise acting in a way likely to cause confusion, mistake or deception on the part of purchasers or consumers as to the origin or sponsorship of such products; and

    iii.    doing any other acts or things calculated or likely to cause confusion or mistake in the minds of the public or to lead purchasers or consumers into the belief that Defendants' products come from Glacéau or are somehow sponsored or licensed by, or associated or affiliated with, Glacéau or its products; and

    iv.    otherwise unfairly competing with Glacéau.

B.    That Defendants and those acting in concert or participation with them (including, but not limited to, their officers, directors, agents, servants, wholesalers, distributors, retailers, employees, representatives, attorneys, subsidiaries, related companies, successors, assigns and contracting parties) take affirmative steps to dispel such false impressions that heretofore have been created by the use of the **spiritual**water trade dress, including, but not limited to, recalling from any and all channels of distribution any and all infringing products and promotional materials.

C.    That Defendants account to Glacéau for their profits and any damages sustained by Glacéau, to the extent calculable, arising from the foregoing acts of

trade dress infringement, false designation of origin, trade dress dilution, deceptive acts and practices and unfair competition.

D.     That, in accordance with such accounting, Glacéau be awarded judgment for three times such profits or damages (whichever is greater), pursuant to 15 U.S.C. § 1117 and N.Y. Gen. Bus. Law § 349(h).

E.     That Glacéau be awarded its costs, including its reasonable attorneys' fees and disbursements in this action, pursuant to 15 U.S.C. § 1117 and N.Y. Gen. Bus. Law § 349(h).

F.     That Glacéau be awarded punitive damages pursuant to the law of the State of New York in view of Defendants' intentional and willful trade dress infringement and other conduct.

G.     That Defendants deliver up for destruction all infringing products in their possession or control and all means of making the same in accordance with 15 U.S.C. § 1118.

H.     That Defendants file with the Court and serve on counsel for Glacéau within thirty (30) days after entry of any injunction issued by the Court in this action, a sworn written statement pursuant to 15 U.S.C. § 1116(a) setting forth in detail the manner and form in which Defendants have complied with any injunction which the Court may enter in this action.

I.     That Glacéau have such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

Glacéau demands a trial by jury on all claims as to which a jury trial may be had.

Dated: November 28, 2007
      New York, New York

                           DEBEVOISE & PLIMPTON LLP

                           By: /s/ S. Zev Parnass
                                 David H. Bernstein (DB 9564)
                                 S. Zev Parnass (SP 3284)
                         919 Third Avenue
                         New York, New York 10022
                         (212) 909-6696 (telephone)
                         (212) 521-7696 (facsimile)

                         *Attorneys for Plaintiff Energy Brands Inc.*
                         *d/b/a Glacéau*

# EXHIBIT 2

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

SOUTHERN                    District of                    NEW YORK

ENERGY BRANDS INC. d/b/a GLACÉAU

**SUMMONS IN A CIVIL ACTION**

V.

SPIRITUAL BRANDS, INC. and ELICKO TAIEB

CASE NUMBER:



07 CV 10644

TO: (Name and address of Defendant)

Elicko Taieb
13191 NW 11th Court
Sunrise, Florida 33323

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

S. Zev Parnass, Esq.
Debevoise & Plimpton LLP
919 Third Avenue
New York, New York 10022

an answer to the complaint which is served on you with this summons, within _____ 20 _____ days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

J. MICHAEL McMAHON                              NOV 2 8 2007

CLERK                                           DATE

(By) DEPUTY CLERK

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
ENERGY BRANDS INC. d/b/a GLACÉAU,          :
                                           :
                    Plaintiff,             :
                                           :          07 Civ. 10644
                                           :
            v.                             :
                                           :          **RETURN OF SERVICE**
                                           :
SPIRITUAL BRANDS, INC. and ELICKO          :
TAIEB,                                     :
                                           :
                    Defendants.            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

I, Nestor R. Mendez, certify that I am not a party to the action, am over eighteen (18) years of age, and I reside in Florida.

That on December 3, 2007 at 8:20 p.m., I personally served copies of the Summons in a Civil Action, the Complaint and Demand for Jury Trial, Statement Pursuant to Rule 7.1, Civil Cover Sheet, ECF Rules & Guidelines and the Judge's Rules on defendant Elicko Taieb by delivering them to Mike "Doe", a co-resident and a person of suitable age and discretion at said defendant's dwelling place and usual place of abode located at 13191 NW 11th Court, Sunrise, Florida 33323.

I declare under penalty of perjury under the laws of the United States of America that the foregoing information is true and correct.

_____
Nestor R. Mendez
4985 SW 164 Avenue
Miramar, Florida

# EXHIBIT 3

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

SOUTHERN _____ District of _____ NEW YORK

ENERGY BRANDS INC. d/b/a GLACÉAU

**SUMMONS IN A CIVIL ACTION**

V.

SPIRITUAL BRANDS, INC. and ELICKO TAIEB

**07 CV 10644**

CASE NUMBER:

TO: (Name and address of Defendant)

Spiritual Brands, Inc.
4301 South Flamingo Road #103-204
Davie, Florida 33330

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

S. Zev Parnass, Esq.
Debevoise & Plimpton LLP
919 Third Avenue
New York, New York 10022

an answer to the complaint which is served on you with this summons, within _____ 20 _____ days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

NOV 2 8 2007

**J. MICHAEL McMAHON**

CLERK                                           DATE

(By) DEPUTY CLERK

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
ENERGY BRANDS INC. d/b/a GLACÉAU,    :
        :
        Plaintiff,    :
        :    07 Civ. 10644
    v.    :
        :    **RETURN OF SERVICE**
SPIRITUAL BRANDS, INC. and ELICKO    :
TAIEB,    :
        :
        Defendants.    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

I, Barbara Markowitz, certify that I am not a party to the action, am over eighteen (18) years of age, and I reside in Florida.

That on December 19, 2007 at 11:00 a.m., I personally served copies of the Summons in a Civil Action, the Complaint and Demand for Jury Trial, Statement Pursuant to Rule 7.1, Civil Cover Sheet, ECF Rules & Guidelines and the Judge's Rules on Kevin L. Hagen, Esq., counsel for defendant Spiritual Brands, Inc., at Hagen & Hagen, P.A., 3531 Griffin Road, Ft. Lauderdale, Florida 33312. Service was effected pursuant to an agreement by such counsel to accept service on behalf of Spiritual Brands, Inc.

I declare under penalty of perjury under the laws of the United States of America that the foregoing information is true and correct.

_____

Barbara Markowitz
Caplan, Caplan and Caplan
172 West Flagler St., #320
Miami, Florida 33130
(305) 374-3426

# EXHIBIT 4

1 of 1 DOCUMENT

**ENERGY BRANDS INC. d/b/a GLACEAU, Plaintiff, - against - SPIRITUAL BRANDS, INC. and ELICKO TAIEB, Defendants.**

**07 Civ. 10644 (DC)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*2008 U.S. Dist. LEXIS 54789*

**July 16, 2008, Decided**
**July 16, 2008, Filed**

**COUNSEL:** [*1] For Plaintiff: Steven Zev Parnass, Esq., David H. Bernstein, Esq., DEBEVOISE & PLIMPTON LLP, New York, New York.

For Defendants: Scott Zarin, Esq., ZARIN & ASSOCIATES P.C., New York, New York.

**JUDGES:** DENNY CHIN, United States District Judge.

**OPINION BY:** DENNY CHIN

**OPINION**

**CHIN, District Judge**

Plaintiff Energy Brands Inc., doing business as Glaceau ("Glaceau"), the maker of the popular smartwater and vitaminwater products, brings this action against Spiritual Brands, Inc. ("Spiritual Brands") and its principal, Elicko Taieb, for trade dress infringement and unfair competition based on defendants' launch of a purified bottled water product, Spiritual Water. Glaceau alleges that defendants embarked on an unlawful campaign to cause consumers to believe that Spiritual Water products were affiliated with the smartwater and vitaminwater brands. Defendants now move to dismiss the complaint pursuant to *Fed. R. Civ. P. 12(b)(2)* for lack of personal jurisdiction. For the reasons that follow, the motion is denied.

**BACKGROUND**

**A.** *The Facts*

A motion to dismiss pursuant to *Fed. R. Civ. P.*

*12(b)(2)* is "'inherently a matter requiring the resolution of factual issues outside of the pleadings . . . [and] all pertinent documentation submitted [*2] by the parties may be considered in deciding the motion.'" *Yellow Page Solutions, Inc. v. Bell Atl. Yellow Pages Co., No. 00 Civ. 5563 (MBM), 2001 U.S. Dist. LEXIS 18831, 2001 WL 1468168, at *1 (S.D.N.Y. Nov. 19, 2001)* (quoting *Pilates, Inc. v. Pilates Inst., Inc., 891 F. Supp. 175, 178 n.2 (S.D.N.Y. 1995))*. Therefore, the following facts are drawn from the complaint, declarations, and exhibits submitted by both parties, and are construed in the light most favorable to plaintiff. *See A.I. Trade Fin., Inc. v. Petra Bank, 989 F.2d 76, 79-80 (2d Cir. 1993)*; *CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986)*.

Spiritual Brands is a Florida corporation with its principal place of business in Florida. (Zarin Decl. Ex. A P 5). Taieb is a domiciliary of Florida. (*Id.* Ex. A P 2). Glaceau is a New York corporation with its principal place of business in New York. (Compl. P 7).

Glaceau launched the smartwater brand in 1996 as a high-quality, vapor-distilled bottled water enhanced with electrolytes. (*Id.* P 13). Glaceau has spent more than ten years cultivating its smartwater brand and the product line is now well-known. (*Id.* PP 2, 6). Notwithstanding the competition in the category, the smartwater brand remains [*3] the recognized leader in the electrolyte-enhanced bottled water category. (*Id.* P 14). In 2006 alone, Glaceau's retail revenues from smartwater beverages exceeded $ 75.6 million, based on the sale of nearly 56 million bottles. (*Id.* P 28).

2008 U.S. Dist. LEXIS 54789, *3

Glaceau's other principal product is a line of flavored water products called vitaminwater. (*Id.* P 4). There are several types of vitaminwater, which have names such as "Balance," "Defense," "Focus," "Formula 50," "Essential," and "Energy." (*Id.*).

Spiritual Brands launched its new purified water product, Spiritual Water, in September 2007. (*Id.* P 1; Zarin Decl. Ex. A P 6). Spiritual Water features religious imagery on its packaging. (Zarin Decl. Ex. D). Spiritual Water markets eleven different water products with names such as "Balance," "Defense," "Focus," and "Formula J'." (*Id.*). Upon its launch, Spiritual Water was featured in several national publications, including Newsweek and the New York Times. (Zarin Decl. Exs. A P 6, E).

From October through December 2007, distributors, retailers, and consumers were able to purchase defendants' Spiritual Water products on their website. Defendants admit that they sold twenty-nine bottles of Spiritual Water product [*4] to fourteen different customers in New York State during those months, for a total of $ 158.53. (*Id.* Ex. G).

On or about November 13, 2007, prior to the instant action being filed, Joseph Aglione, a private investigator hired by Glaceau, purchased Spiritual Water on defendants' website, using his wife's name, for delivery to him in New York State. (Aglione Decl. PP 1, 3, 4, Ex. A). He received an introductory email from Spiritual Brands subsequent to placing his online order. (*Id.* P 5, Ex. B). He also emailed a representative of Spiritual Brands via the website regarding his purchase, and the representative responded to his email. (*Id.*).

In January 2008, after this suit was filed, Spiritual Brands revamped its website, no longer permitting any internet sales of Spiritual Water products to retailers and distributors, and no longer permitting any sales whatsoever directly to consumers via the internet or otherwise. (Zarin Decl. Ex. A P 9). Website visitors are able to purchase Spiritual Water business cards and print items bearing the Spiritual Water mark. (Parnass Decl. Ex. D).

The current and previous versions of the Spiritual Water website include customer testimonials. (*Id.* Ex. B). [*5] Two such testimonials are from individuals who identify themselves as hailing from New York: first, "Bob, NY" who states, "I love spiritual water," and

second, "Unknown, NY," who states, in part, "Spiritual Water will help you clean your soul." (*Id.*). The other eight testimonials on the website are from individuals in Florida, Massachusetts, South Carolina, California, and Texas. (*Id.*). The current and previous versions of the website also advertise a Spiritual Water event "'coming soon" to New York, New York. (*Id.* Ex. C).

**B.** *Procedural History*

On November 28, 2007, Glaceau filed the instant complaint, alleging that defendants embarked on an unlawful campaign to lure consumers into purchasing Spiritual Water under the mistaken belief that it comes from, is sponsored or licensed by, or is associated with, affiliated with, the smartwater brand. Glaceau further alleges that the packaging of Spiritual Water products mimics several key elements of smartwater's trade dress. Plaintiff also alleges that several names that defendants selected for their products -- for example, "Balance," "Defense," "Focus," and "Formula J'" -- are [*6] strikingly identical to some of Glaceau's popular flavors of vitaminwater.

On May 2, 2008, Spiritual Brands and Taieb moved to dismiss for lack of personal jurisdiction. Glaceau opposes the motion, and requests that the Court impose sanctions and costs.

*DISCUSSION*

**A.** *Motions to Dismiss for Lack of Personal Jurisdiction Pursuant to Rule 12(b)(2)*

In opposing a motion to dismiss for lack of personal jurisdiction pursuant to *Fed. R. Civ. P. 12(b)(2)*, "the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Kernan v. Kurz-Hastings, Inc., 175 F.3d 236, 240 (2d Cir. 1999)* (quoting *Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996))*. At the pleadings stage, prior to discovery, plaintiff is required only to make a *prima facie* showing of jurisdiction. [1] *DiBella v. Hopkins, 187 F. Supp. 2d 192, 198 (S.D.N.Y. 2002)*; *Jazini v. Nissan Motor Co., 148 F.3d 181, 184 (2d Cir. 1998)*. "[A] prima facie showing of jurisdiction does not mean that plaintiff must show only some evidence that defendant is subject to jurisdiction; it means that plaintiff must plead facts which, if true, are sufficient in themselves to establish jurisdiction." *Bellepointe, Inc. v. Kohl's Dep't Stores, Inc., 975 F. Supp. 562, 564 (S.D.N.Y.*

*1997).*

1  "The [*7] analysis differs, however, if the jurisdictional challenge involves discovery and a hearing: in such a case the plaintiff must demonstrate jurisdiction by a preponderance of the evidence." *Del Ponte v. Universal City Dev. Partners, Ltd., No. 07 Civ. 2360 (KMK), 2008 U.S. Dist. LEXIS 3528, 2008 WL 169358, at *2 n.1 (S.D.N.Y. Jan. 16, 2008)* (citing *Cutco Indus., 806 F.2d at 364).* Here, defendants did not request an evidentiary hearing or discovery.

If the court does not conduct a full evidentiary hearing on the motion to dismiss, plaintiff is required only to make a prima facie showing of personal jurisdiction through affidavits and other materials submitted for the motion. *Grand River Enters. Six Nations, Ltd. v. Pryor, 425 F.3d 158, 165 (2d Cir. 2005).* In this situation, a court may consider documents beyond the pleadings. *See, e.g., St. Paul Fire & Marine Ins. Co. v. Eliahu Ins. Co., No. 96 Civ. 7269 (MBM), 1997 U.S. Dist. LEXIS 8916, 1997 WL 357989, at *1 (S.D.N.Y. June 26, 1997)* (motion to dismiss for lack of personal jurisdiction requires consideration and resolution of factual issues outside of the pleadings, and the court may consider documents beyond the pleadings). Furthermore, the pleadings and supporting documents shall be construed [*8] in the ligh most favorable to plaintiff as the non-moving party. *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc., 918 F.2d 1039, 1043 (2d Cir. 1990).*

To determine whether it may exercise personal jurisdiction over a non-domiciliary, a district court engages in a two-part analysis. First, the court determines whether jurisdiction exists under the law of the forum state -- in this case, New York. *Grand River, 425 F.3d at 165.* New York law recognizes two types of personal jurisdiction over non-domiciliaries: general personal jurisdiction and long-arm personal jurisdiction. *Big Apple Pyrotechnics & Multimedia, Inc. v. Sparktacular Inc., No. 05 Civ. 9994 (KMW), 2007 U.S. Dist. LEXIS 17163, 2007 WL 747807, at *2 (S.D.N.Y. Mar. 9, 2007).* Second, the exercise of personal jurisdiction must comport with the *Due Process Clause of the U.S. Constitution. D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 104 (2d Cir. 2006).*

**1. *Long-Arm Jurisdiction in New York***

The parties here agree that the relevant substantive law applicable to this motion is *N.Y. C.P.L.R. § 302(a),* New York's long-arm statute. 2 Glaceau argues that two sections of the provision -- § 302(a)(1) and § 302(a)(3)(ii) -- provide independent bases for personal [*9] jurisdiction over defendants.

2  Although plaintiff cites *N.Y. C.P.L.R. § 301* -- New York's general jurisdiction statute -- as a basis for personal jurisdiction in the complaint, it does not argue it provides a basis for personal jurisdiction in its moving papers. Accordingly, I do not address it.

**a. *New York C.P.L.R. § 302(a)(1)***

Under *C.P.L.R. § 302(a)(1),* a court in New York may exercise personal jurisdiction over a non-domiciliary party if (1) he "transacts any business within the state" and (2) the "cause of action aris[es] from" the business contacts. *N.Y. C.P.L.R. § 302(a)(1)* (McKinney 2006); *see Best Van Lines, Inc. v. Walker, 490 F.3d 239, 246 (2d Cir. 2007); D.H. Blair & Co., 462 F.3d at 104.*

The "transacting business" element requires a defendant to have "'purposely availed [himself] of the privilege of conducting activities within New York and thereby invoked the benefits and protections of its laws.'" *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 787 (2d Cir. 1999)* (quoting *Parke-Bernet Galleries, Inc. v. Franklyn, 26 N.Y.2d 13, 256 N.E.2d 506, 308 N.Y.S.2d 337, 341 (1970))* (alterations in original); *see also Family Internet, Inc. v. Cybernex, Inc., No. 98 Civ. 0637 (RWS), 1999 U.S. Dist. LEXIS 15549, 1999 WL 796177, at *5 (S.D.N.Y. Oct. 6, 1999).* [*10] *Section 302* is a "single-act statute requiring but one transaction -- albeit a purposeful transaction -- to confer jurisdiction in New York." *Grand River, 425 F.3d at 166* (internal quotation omitted),

The "arising out of" element requires "a substantial nexus" between the business transaction and the claim. *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp., 98 F.3d 25, 31 (2d Cir. 1996).* Accordingly, even a single, purposeful action directed at New York will be sufficient to confer personal jurisdiction over a defendant not physically present in New York, so long as that action bears a substantial relationship to the cause of action. *Corporate Campaign, Inc. v. Local 7837, United Paperworkers Int'l Union, 265 A.D.2d 274, 697 N.Y.S.2d 37, 39 (1st Dep't 1999).*

With respect to *C.P.L.R. § 302(a)(1)*, Judge Sweet of this Court has identified a range of situations involving a defendant's use of the internet to transact business in New York:

> At one end are cases where the defendant makes information available on what is essentially a "passive" web site. This use of the internet has been analogized to an advertisement in a nationally-available magazine or newspaper, and does not without more justify the [*11] exercise of jurisdiction over the defendant. At the other end of the spectrum are cases in which the defendant clearly does business over the internet, such as where it knowingly and repeatedly transmits computer files to customers in other states. Finally, occupying the middle ground are cases in which the defendant maintains an interactive web site which permits the exchange of information between users in another state and the defendant, which depending on the level and nature of the exchange may be a basis for jurisdiction.

*Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 565 (S.D.N.Y. 2000) (citations omitted); *see also Student Advantage, Inc. v. Int'l Student Exch. Cards, Inc.*, No. 00 Civ. 1971 (AGS), 2000 U.S. Dist. LEXIS 13138, 2000 WL 1290585, at **3-4 (S.D.N.Y. Sept. 13, 2000).

Therefore, passive websites that are not commercial in nature -- for example, those that do not permit the purchase of products online -- are insufficient to confer jurisdiction under *§ 302(a)(1)*. *See, e.g., Molozanov v. Quantum Telecomms. Ltd.*, No. 05 Civ. 5270 (NRB), 2006 U.S. Dist. LEXIS 16788, 2006 WL 897206, at *5 n.11 (S.D.N.Y. Apr. 6, 2006) ("Although in some instances a defendant's contacts with New York via the internet can provide a basis for [*12] jurisdiction under *CPLR § 302(a)(1)* . . . this would not hold true here, as this case involves at most the publishing of a statement on a passive website"). Active websites used by New York consumers to purchase an out-of-state defendant's products, on the other hand, generally confer personal jurisdiction. *See New Angle Pet Prods., Inc. v. MacWillie's Golf Prod., Inc.*, No. 06 Civ. 1171 (DRH), 2007 U.S. Dist. LEXIS 46952, 2007 WL 1871345, at *3

(E.D.N.Y. June 28, 2007); *Student Advantage*, 2000 U.S. Dist. LEXIS 13138, 2000 WL 1290585, at *4; *Hsin Ten Enter. USA, Inc. v. Clark Enters.*, 138 F. Supp. 2d 449, 456 (S.D.N.Y. 2000) ("Generally, an interactive website supports a finding of personal jurisdiction over the defendant.").

### b. *New York C.P.L.R. § 302(a)(3)(ii)*

Under *C.P.L.R. § 302(a)(3)(ii)*, a court in New York may exercise jurisdiction over a non-domiciliary when the defendant (1) committed a tortious act outside New York, (2) that causes injury within New York State, and (3) the defendant expects or should reasonably expect the act to have consequences in the state and (4) derives substantial revenue from interstate or international commerce. *See N.Y. C.P.L.R. § 302(a)(3)* (McKinney 2006); *Darby Trading Inc. v. Shell Int'l Trading & Shipping Co.*, No. 07 Civ. 0400 (KMK), 2008 U.S. Dist. LEXIS 25980, 2008 WL 852787, at *5 (S.D.N.Y. Mar. 31, 2008).

### i. [*13] *Tortious Act Outside of New York*

"As to the tortious act requirement, the out-of-state act must be the proximate cause of the injury in New York, i.e., the act must be 'so close to the injury that reasonable people would regard it as a cause of the injury.'" *Tri-Coastal Design Group, Inc. v. Merestone Merchandise, Inc.*, No. 05 Civ. 10633 (HB), 2006 U.S. Dist. LEXIS 25307, 2006 WL 1167864, at *4 (S.D.N.Y. May 03, 2006) (quoting *Art Leather Mfg. Co., Inc. v. Albumx Corp.*, 888 F. Supp. 565, 568 (S.D.N.Y. 1995)).

As the *Citigroup* court explained,

> the mere creation and maintenance of web sites bearing infringing marks does not constitute a tort in any state where the sites can be viewed. Thus, to the extent that the web sites at issue are simply capable of being viewed in New York, without more, any tortious activity must be deemed to have occurred outside of New York.

*Citigroup*, 97 F. Supp. 2d at 568. Rather, in trademark infringement cases, the tort occurs "'where the passing off occurs,' that is, where the customer purchases the defendant's goods in the mistaken belief that they are the trademark owner's products." *Tri-Coastal Design Group,*

*2006 U.S. Dist. LEXIS 25307, 2006 WL 1167864, at *4* (quoting *Aerogroup Int'l, Inc. v. Marlboro Footworks, Ltd., 956 F. Supp 427, 433 (S.D.N.Y. 1996)*).

### ii. [*14] *Injury Caused in New York*

It is firmly established that the domicile or residence of an injured party within New York is not enough to establish personal jurisdiction -- rather, a more direct injury must have occurred within New York State. *Fantis Foods, Inc. v. Standard Importing Co., 49 N.Y.2d 317, 402 N.E.2d 122, 425 N.Y.S.2d 783, 787 (1980)*; *see also Am. Network, Inc. v. Access Am./Connect Atlanta, Inc., 975 F. Supp. 494, 497 (S.D.N.Y. 1997)*. This element has long been interpreted to include "harm to a business in the New York market through lost sales or lost customers." *Am. Network, 975 F. Supp. at 497*; *see Register.Com, Inc. v. Domain Registry of Am., Inc., No. 02 Civ. 6915 (NRB), 2002 U.S. Dist. LEXIS 24795, 2002 WL 31894625, at *7 (S.D.N.Y. Dec. 27, 2002)*. Furthermore, in trademark infringement cases, the injury requirement is satisfied by harm and threatened harm resulting from actual or potential confusion and deception of internet users in New York State. *Pitbull Prods., Inc. v. Universal Netmedia, Inc., No. 07 Civ. 1784 (RMB), 2008 U.S. Dist. LEXIS 30633, 2008 WL 1700196, at *7 (S.D.N.Y. Apr. 04, 2008)*.

### iii. *Defendant Reasonably Expects Consequences*

An objective test -- and not a subjective test -- governs whether a defendant expects or should reasonably expect [*15] his act to have consequences within New York. *Kernan, 175 F.3d at 241*. The mere "likelihood or foreseeability of a defendant's product will find its way into New York" is alone insufficient to satisfy *§ 302(a)(3)(ii)*. *Id.* (citations and quotations omitted). "[F]oreseeability must be coupled with evidence of a purposeful New York affiliation, for example, a discernible effort to directly or indirectly serve the New York market." *Schaadt v. T.W. Kutter, Inc., 169 A.D.2d 969, 564 N.Y.S.2d 865, 866 (3d Dep't 1991)*. A court must assess whether defendant purposefully availed himself of the benefits of the laws of New York, to the extent that he would reasonably anticipate being haled into a New York court. *Kernan, 175 F.3d at 241*. New York courts will assess whether the facts demonstrate that defendant should have been aware that its product would enter the New York market. *Foot Locker Retail, Inc. v. SBH, Inc., No. 03 Civ. 5050 (DAB), 2005 U.S. Dist. LEXIS 599, 2005 WL 91306, at *4*

*(S.D.N.Y. Jan. 18, 2005)*.

### iv. *Derives Substantial Revenue from Interstate Commerce*

There is no bright-line rule regarding when a specific level of revenue becomes substantial for purposes of *302(a)(3)(ii)*. *Light v. Taylor, No. 05 Civ. 5003 (WHP), 2007 U.S. Dist. LEXIS 5855, 2007 WL 274798, at *4 (S.D.N.Y. Jan. 29, 2007)*; *see* [*16] *City of New York v. A-1 Jewelry & Pawn, Inc., 501 F. Supp. 2d 369, 417 (E.D.N.Y. 2007)*. Courts will instead assess either (1) the percentage of a party's overall revenue derived from interstate commerce, or (2) the absolute revenue generated by a defendant's interstate commerce activities. *Light, 2007 U.S. Dist. LEXIS 5855, 2007 WL 274798, at *4*. Each case will, however, be decided on its own unique set of facts. *Id.* "Irrespective of the approach chosen, the main concern is the overall nature of the defendant's business and the extent to which he can fairly be expected to defend lawsuits in foreign forums." *Id.* (internal quotations and citations omitted).

Additionally, dismissal for lack of personal jurisdiction is inappropriate under *302(a)(3)(ii)* "even where there is no proof that a defendant derives substantial revenue from interstate or international commerce, where that knowledge is peculiarly under the control of [the defendant], and may come to light in the course of [s]ubsequent discovery." *Mfg. Tech., Inc. v. Kroger Co., No. 06 Civ. 3010 (JSR), 2006 U.S. Dist. LEXIS 90393, 2006 WL 3714445, at *3 (S.D.N.Y. Dec. 13, 2006)* (internal quotation omitted) (alterations in original); *A-1 Jewelry & Pawn, Inc., 501 F. Supp. 2d at 418*.

### 2. [*17] *Due Process*

Due process requires that a non-resident defendant have minimum contacts with the forum state, such that traditional notions of fair play and substantial justice are not offended by maintaining a suit against him. *Calder v. Jones, 465 U.S. 783, 788, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984)*; *see U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., 241 F.3d 135, 152 (2d Cir. 2001)*. " [O]nly pre-litigation contacts are relevant to the jurisdictional question." *ISI Brands, Inc. v. KCC Int'l, Inc., 458 F. Supp. 2d 81, 88 (E.D.N.Y. 2006)* (internal quotation omitted).

While the Supreme Court has concluded that courts

may only assert personal jurisdiction over non-domiciliaries who have sufficient minimum contacts, *see, e.g., Int'l Shoe Co. v. State of Washington, 355 U.S. 220 (1957)*, C.P.L.R. § 302 does not sweep so widely. Rather, the statute seeks merely to obtain personal jurisdiction over non-domiciliaries where the cause of action arises out of activity conducted with the state. *United States v. Montreal Trust Co., 358 F.2d 239, 242 (2d Cir. 1966)*. Therefore, as a practical matter, the *Due Process Clause* permits the exercise of jurisdiction in a broader range of circumstances of *N.Y. C.P.L.R. § 302*, and a foreign [*18] defendant meeting the standards of *§ 302* will satisfy the due process standard. *See id.* (exercise of personal jurisdiction under New York's long-arm statute does not present constitutional issues because it is narrower than *Due Process Clause*).

**B.** *Personal Jurisdiction Can Be Exercised over Defendants*

I conclude that personal jurisdiction can be exercised over defendants under both *New York C.P.L.R. § 302(a)(1)* and *§ 302(a)(3)(ii)*.

**1.** *C.P.L.R. § 302(a)(1)*

Personal jurisdiction is proper under *C.P.L.R. § 302(a)(1)* because defendants have transacted business within New York and the causes of action arise from that business.

First, Glaceau has demonstrated that defendants sold Spiritual Water directly to New Yorkers over an active commercial website on at least a dozen occasions, using defendants' own sales records and the investigatory materials submitted by counsel's private investigator. The fact that there were only roughly a dozen sales certainly does not preclude the exercise of personal jurisdiction, as "[e]ven one instance of purposeful activity directed at New York is sufficient to create jurisdiction." *Corporate Campaign, 697 N.Y.S.2d at 39*. Furthermore, defendants' website sales [*19] required the exchange of billing, shipping, and contact information for the sales to New York consumers to be consummated, indicating the "active" nature of the commercial website.

Case law clearly demonstrates that under these circumstances, defendants have purposely availed themselves of the privilege of conducting activities in New York, and the first prong of *C.P.L.R. § 302(a)(1)* is met. *See Cenage Learning, Inc. v. Buckeye Books, 531 F.*

*Supp. 2d 596, 599 (S.D.N.Y. 2008)* (jurisdiction over defendant exists "by virtue of its alleged [internet] sales of infringing and unauthorized foreign edition textbooks to the defendants in New York and its shipment of nine of those textbooks into New York"); *New Angle Pet Prods., 2007 U.S. Dist. LEXIS 46952, 2007 WL 1871345, at *3* (personal jurisdiction proper where defendant's website allowed viewers to purchase product online by providing payment, shipping information, contact information); *Rubin v. City of New York, No. 06 Civ. 6524 (HB), 2007 U.S. Dist. LEXIS 23003, 2007 WL 950088, at *3 (S.D.N.Y. Mar. 29, 2007)* (with respect to counterclaim, where plaintiff "transacted business with New York residents over an 'active' website where customers from New York purchased allegedly infringing merchandise" [*20] in trademark case, the court had personal jurisdiction); *Alpha Int'l, Inc. v. T-Reproductions, Inc., No. 02 Civ. 9586 (SAS), 2003 U.S. Dist. LEXIS 11224, 2003 WL 21511957, at *3 (S.D.N.Y. July 1, 2003)* (personal jurisdiction over defendant proper where it sold "at least one accused product to a New York resident through its website"); *Mattel, Inc. v. Adventure Apparel, No. 00 Civ. 4085 (RWS), 2001 U.S. Dist. LEXIS 3179, 2001 WL 286728, at *3 (S.D.N.Y. Mar. 22, 2001)* (where a private investigator in New York ordered allegedly infringing merchandise from defendant's website and the merchandise was sent to New York, defendant was transacting business within the meaning of *C.P.L.R. § 302(a)(1)*); *Hsin Ten, 138 F. Supp. 2d at 456* (district court had personal jurisdiction over defendant where website allowed consumers to purchase products, communicate with defendant's representatives, and download materials).

The second prong is also met. The internet sales of Spiritual Water bear a substantial nexus to the claim because plaintiff alleges that those sales were potentially diverted from it as a result of consumer confusion and the products sold in New York bore the trade dress at issue.

Defendants argue that their website is of a commercial nature, [*21] but is not "active" in its current form because it does not permit consumers to place orders or email questions. Defendants have, however, already conceded that consumers in New York were permitted to -- and in fact did -- place orders over the internet from October to December 2007, which is inclusive of the date that this action was filed. The fact that defendants changed their website *after* the complaint was filed to remove any elements that support a finding

of personal jurisdiction is inconsequential.

Defendants cite *ISI Brands, Inc. v. KCC International, Inc.*, 458 F. Supp. 2d 81 (E.D.N.Y. 2006), for the proposition that the activities conducted through their website do not make them subject to personal jurisdiction pursuant to *C.P.L.R. § 302(a)(1)*. Defendants' reliance on the *ISI Brands* case is wholly misplaced. The ISI Brands court concluded that there was no personal jurisdiction over defendant, in part, because the two sales made to New York residents via the website at issue in that case were irrelevant to its personal jurisdiction analysis, as they were (1) both made by plaintiff's representative in furtherance of the litigation, (2) were made only after the complaint was [*22] filed, and (3) these were the *only* sales alleged to have been made to individuals in New York. *See ISI Brands, 458 F. Supp. 2d at 88* ("[O]nly pre-litigation contacts are relevant to the jurisdictional question." (internal quotation omitted)).

The website at issue in this case is clearly interactive: at the time the action was commenced, consumers in New York could -- and did -- purchase Spiritual Water that was delivered to them in New York. Defendants fail to recognize the central principal advanced by the district court in *ISI Brands:* that "the existence of an interactive 'patently commercial' website that can be accessed by New York residents is not sufficient to justify the exercise of personal jurisdiction *unless some degree of commercial activity occurred in New York.*" *Id.* at 87-88 (emphasis added). This is exactly the case here.

Furthermore, the fact that plaintiff's investigator placed an order has different significance in this case, as plaintiff does not argue this sale provides the sole basis for personal jurisdiction. Rather, the other fourteen sales do. Plus, the investigator's order was placed *prior* to the filing of this action.

Accordingly, defendants' internet sales to [*23] New York consumers provide ample basis for the exercise of long-arm jurisdiction pursuant to *§ 302(a)(1)*.

## 2. *C.P.L.R. § 302(a)(3)(ii)*

*C.P.L.R. § 302(a)(3)(ii)* provides a second, independent basis for exercising long-arm jurisdiction over defendants. Plaintiff has made a *prima facie* showing that (1) defendants committed a *tortious act* outside New York, (2) that caused injury within New York State, (3) defendants expected or should reasonably

have expected the act to have consequences in New York, and (4) they derived substantial revenue from interstate commerce. Each element is discussed in turn.

### a. *Tortious Act Outside of New York*

Glaceau argues that defendants' infringement and dilution constitute tortious activity under *C.P.L.R. § 302(a)(3)(ii)*. "Trademark infringement can be a 'tort' for [the] purpose of determining long-arm jurisdiction." *PDK Labs, Inc. v. Proactive Labs, Inc., 325 F. Supp. 2d 176, 180 (E.D.N.Y. 2004)* (citation and internal quotations omitted). Here, the allegedly infringing goods were passed off in New York State to the consumers who purchased them on defendants' website. Accordingly, Glaceau has met the first prong of the test. *See Ivoclar Vivadent, Inc. v. Ultident, Inc., No. 04 CV. 0984 (SC), 2005 U.S. Dist. LEXIS 20382, 2005 WL 1421805, at *4 (W.D.N.Y. June 15, 2005)* [*24] (plaintiff's allegations that "defendant's sale and shipment of the Products infringes on plaintiff's trademarks, threatens the distinctive quality of plaintiff's trademark, confuses plaintiff's customers and threatens plaintiff's reputation . . . amount to a tortious act resulting in an injury in New York -- the place where plaintiff, the trademark owner, resides and conducts business -- and meets the first two requirements of CPLR § 302(a)(3).")

### b. *Injury Caused in New York*

The "injury within the state" prong is also satisfied. The sales of Spiritual Water to New York consumers through defendants' website, and not the mere existence of defendants' website or the presence of plaintiff in New York, give rise to Glaceau's alleged lost sales and customers. Defendants' goods were purportedly passed off and sold to New Yorkers who were actually or potentially confused as to their origin. *See Tri-Coastal Design Group, 2006 U.S. Dist. LEXIS 25307, 2006 WL 1167864, at *4* (concluding that plaintiff's allegation "that infringing sales were made in New York is legally sufficient to satisfy the requirement of 'injury to person or property within the state.'"); *Savage Universal Corp. v. Grazier Constr., Inc., No. 04 Civ. 1089 (GEL), 2004 U.S. Dist. LEXIS 16088, 2004 WL 1824102, at *9 (S.D.N.Y. Aug. 13, 2004)* [*25] (injury from tortious infringement can include damage to goodwill and lost sales or customers).

Glaceau also persuasively argues that its actual or potential New York customers were confused or deceived

merely by viewing images of Spiritual Water products on defendants' website. This lends further support to a finding of injury within the state. *Am. Network, 975 F. Supp. at 497* (injury within the state prong is met by plaintiff's claims of harm in the New York market resulting from the confusion of New York computer users who viewed infringing mark on defendant's website); *see also Citigroup, 97 F. Supp. 2d at 568* (plaintiff's claim that "its actual and potential customers in New York are confused or deceived when they view and interact with the City National web sites" is sufficient).

### c. *Defendant Reasonably Expects Consequences.*

Several factors should have alerted defendants that their Spiritual Water products would enter the New York market. Therefore, this prong of the test is met.

First, as in *Citigroup,* "it was reasonably foreseeable that publication of web sites with the offending marks would have consequences in New York." *Citigroup, 97 F. Supp. 2d at 568*; *see New Angle Pet Prods., 2007 U.S. Dist. LEXIS 46952, 2007 WL 1871345, at *3* [*26] (concluding that "there is an 'articulable nexus' between Plaintiff's claims of false advertising and Defendant's on-line internet business because the alleged false advertising was displayed on Defendant's websites where the on-line orders were submitted").

Second, defendants filled orders with delivery addresses in New York. Third, the customer testimonial section of the website demonstrates that customers encountered the products first hand in New York. Fourth, the references on defendants' website to press articles about the product that ran in New York -- notably a New York Times article published about Spiritual Water -- further supports the conclusion that defendants could reasonably expect their actions would be consequential in New York.

Finally, the fact that the defendants' website advertises an event "coming soon" to New York adds support to the finding of jurisdiction, as this would specifically attract New York consumers to purchase their products. *Am. Network, 975 F. Supp. at 498* (statement on website that defendant could help customers "across the U.S." supported the exercise of long-arm jurisdiction).

### d. *Derives Substantial Revenue from Interstate Commerce*

While defendants' [*27] sales in New York may appear *de minimis* at first blush, this does not defeat jurisdiction. Defendants have not submitted any evidence whatsoever of their profits from interstate commerce, despite the fact that Glaceau requested the information. The sales to New Yorkers that were disclosed were not supported with any documentation other than a simple spreadsheet that appears to have been created by defendants solely for this motion. The document omits the sale made to Aglione in New York. This gives weight to plaintiff's contention that defendants have not been forthcoming regarding their sales in New York. Plaintiff is entitled to discovery to determine whether there were any other sales in New York.

As previously noted, dismissal for lack of personal jurisdiction is inappropriate under *§ 302(a)(3)* "even where there is no proof that a defendant 'derives substantial revenue from interstate or international commerce,' where that knowledge is peculiarly under the control of [the defendant].'" *Mfg. Tech., 2006 U.S. Dist. LEXIS 90393, 2006 WL 3714445, at *3* (internal quotations omitted) (alteration in original). Such is the case here. I therefore conclude that the revenue of $ 158.53 earned from sales in New York is [*28] sufficiently substantial in light of the circumstances.

Defendants argue that the majority of their sales come from Florida, and are therefore local in nature. This is unpersuasive in light of the fact that (1) the Spiritual Brands website itself characterizes the Spiritual Water product as "sold in the United States" -- not only Florida (*see* Parnass Decl. Ex. A), and (2) defendants fail to provide meaningful documentation.

### C. *Request for Sanctions and Costs*

I turn to Glaceau's request for sanctions against defendants, including fees and costs, for pursuing a baseless motion after admitting that the facts show they had sales in New York. For the following reasons, Glaceau's request for sanctions is denied.

A district court may sanction an attorney or a party pursuant to its inherent power to manage its own affairs. *Chambers v. NASCO, Inc., 501 U.S. 32, 43-44, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991)*. This inherent power includes the ability "to fashion an appropriate sanction for conduct which abuses the judicial process," *id. at 44-45*, such as the assessment of attorneys' fees against "a party [that] has acted in bad faith, vexatiously, wantonly,

or for oppressive reasons," *id. at 45-46* (internal quotation omitted). To [*29] impose sanctions pursuant to the court's inherent powers in the Second Circuit, "a court must find clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith -- that is, motivated by improper purposes such as harassment or delay." *Eisemann v. Greene, 204 F.3d 393, 396 (2d Cir. 2000)* (internal quotation omitted); *see Dux S.A. v. Megasol Cosmetic GMBH, No. 03 Civ. 8820 (RO), 2006 U.S. Dist. LEXIS 395, 2006 WL 44007, at *2 (S.D.N.Y. Jan. 9, 2006).* A claim is colorable "when it has some legal and factual support, considered in light of the reasonable beliefs of the individual making the claim." *Nemeroff v. Abelson, 620 F.2d 339, 348 (2d Cir. 1980).* Sanctions imposed pursuant to the court's inherent power may be made against the losing party or against the losing party's attorneys, or both. *Dux S.A., 2006 U.S. Dist. LEXIS 395, 2006 WL 44007, at *2.*

The Second Circuit has "interpreted the bad faith standard restrictively." *Eisemann, 204 F.3d at 396.*

> To ensure . . . that fear of an award of attorneys' fees against them will not deter. persons with colorable claims from pursuing those claims, [the Second Circuit has] declined to uphold awards under the bad-faith exception absent [*30] both clear evidence that the challenged actions are entirely without color, and are taken for reasons of harassment or delay or for other improper purposes and a high degree of specificity in the factual findings of the

lower courts.

*Dow Chem. Pac. Ltd. v. Rascator Maritime S.A., 782 F.2d 329, 344 (2d Cir. 1986)* (internal citations and quotations omitted).

Plaintiff's request for sanctions is denied, for plaintiff has not clearly shown that defendants acted in bad faith. The fact that defendants' motion wholly lacks merit is not enough, by itself, to prove bad faith. *See Eisemann 204 F.3d at 397* (concluding the district court's conclusion of bad faith based almost entirely on motion's lack of merit was insufficient in light of lack of factual specificity).

### CONCLUSION

Defendants' motion to dismiss for lack of personal jurisdiction is denied, and plaintiff's request for sanctions is denied as well. The parties shall proceed with discovery. All discovery, both fact and expert, shall be completed by October 17, 2008. The Court will hold a pre-trial conference on October 17, 2008 at 10:00 a.m., in Courtroom 11A.

SO ORDERED.

Dated: New York, New York

July 16, 2008

/s/ Denny Chin

DENNY CHIN

United  [*31] States District Judge

# EXHIBIT 5

ECF

# U.S. District Court
## United States District Court for the Southern District of New York (Foley Square)
## CIVIL DOCKET FOR CASE #: 1:07-cv-10644-DC

| | |
|---|---|
| Energy Brands Inc. v. Spiritual Brands, Inc. et al | Date Filed: 11/28/2007 |
| Assigned to: Judge Denny Chin | Jury Demand: Plaintiff |
| Cause: 15:1125 Trademark Infringement (Lanham Act) | Nature of Suit: 840 Trademark |
| | Jurisdiction: Federal Question |

**Plaintiff**

**Energy Brands Inc.**
*doing business as*
Glaceau

     represented by   **David H. Bernstein**
Debevoise & Plimpton, LLP (NYC)
919 Third Avenue
31st Floor
New York, NY 10022
212 909-6000
Fax: 212 521-7696
Email: dhbernstein@debevoise.com
*ATTORNEY TO BE NOTICED*

**Steven Zev Parnass**
Debevoise & Plimpton LLP
919 Third Avenue
New York, NY 10022
(212)-909-6613
Fax: (212)-909-6836
Email: szparnas@debevoise.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Spiritual Brands, Inc.**

     represented by   **Scott Zarin**
Zarin & Associates, P.C.,
303 Park Avenue South, Ste. 1229
New York, NY 10010
(212)-580-3131
Fax: (212)-580-4393
Email: scottzarin@copyrightcounsel.net

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Elicko Taieb**                              represented by  **Scott Zarin**
                                                  (See above for address)
                                                  *LEAD ATTORNEY*
                                                  *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 11/28/2007 | 1 | COMPLAINT against Spiritual Brands, Inc., Elicko Taieb. (Filing Fee $ 350.00, Receipt Number 634489)Document filed by Energy Brands Inc..(jmi) (Entered: 11/30/2007) |
| 11/28/2007 | | SUMMONS ISSUED as to Spiritual Brands, Inc., Elicko Taieb. (jmi) (Entered: 11/30/2007) |
| 11/28/2007 | | Magistrate Judge Theodore H. Katz is so designated. (jmi) (Entered: 11/30/2007) |
| 11/28/2007 | | Case Designated ECF. (jmi) (Entered: 11/30/2007) |
| 11/28/2007 | 2 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. Identifying Coca-Cola Company as Corporate Parent. Document filed by Energy Brands Inc. (jmi) (Entered: 11/30/2007) |
| 11/28/2007 | | Mailed notice to Commissioner of Patents and Trademarks to report the filing of this action. (jmi) (Entered: 11/30/2007) |
| 12/14/2007 | 3 | NOTICE OF CASE REASSIGNMENT to Judge Denny Chin. Judge Laura Taylor Swain is no longer assigned to the case. (laq) (Entered: 12/20/2007) |
| 12/20/2007 | | Mailed notice to the attorney(s) of record. (laq) (Entered: 12/20/2007) |
| 01/04/2008 | 4 | SUMMONS RETURNED EXECUTED Summons and Complaint served. Spiritual Brands, Inc. served on 12/19/2007, answer due 1/8/2008. Service was accepted by Kevin L. Hagen, Esq.. Document filed by Energy Brands Inc.. (Parnass, Steven) (Entered: 01/04/2008) |
| 01/04/2008 | 5 | SUMMONS RETURNED EXECUTED Summons and Complaint served. Elicko Taieb served on 12/3/2007, answer due 12/23/2007. Service was accepted by Mike "Doe". Document filed by Energy Brands Inc.. (Parnass, Steven) (Entered: 01/04/2008) |
| 01/22/2008 | 6 | STIPULATION AND ORDER: On 1/11/08, counsel for Glaceau agreed to an extension of time for defendants to file their answers to the complaint by 1/28/08. In exchange, defendants would waive their rights to challenge the complaint on the grounds of (a) lack of subject matter jurisdiction, (b) insufficient process, or (c) insufficient service of process. Spiritual Brands, Inc. answer due 1/28/2008; Elicko Taieb answer due 1/28/2008. (Signed by Judge Denny Chin on 1/22/08) (db) (Entered: 01/23/2008) |
| 02/04/2008 | 7 | ENDORSED LETTER addressed to Judge Denny Chin from Scott Zarin dated 1/29/08 re: I request for an extension oftime until 3/15/08, to file defendants' Answer and/or any permissible motion to dismiss. ENDORSEMENT: Application GRANTED only to the extent defendants' time to answer is |

| | | |
|---|---|---|
| | | extended until 2/19/08. A pretrial conference will be held on 2/29/08 at 10:30 am. Spiritual Brands, Inc. answer due 2/19/2008; Elicko Taieb answer due 2/19/2008.( Pretrial Conference set for 2/29/2008 at 10:30 AM before Judge Denny Chin.) (Signed by Judge Denny Chin on 2/4/08) (cd) (Entered: 02/04/2008) |
| 05/16/2008 | 8 | MEMORANDUM OF LAW in Opposition *to Defendants' Motion to Dismiss (Defendants' Motion to Dismiss and supporting papers served on Plaintiff by FedEx on 5/2 - but not reflected on docket)*. Document filed by Energy Brands Inc.. (Parnass, Steven) (Entered: 05/16/2008) |
| 05/16/2008 | 9 | DECLARATION of S. Zev Parnass in Support of Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss, with exhibits (Defendants' Motion to Dismiss and supporting papers served on Plaintiff by FedEx on 5/2 - but not reflected on docket).. Document filed by Energy Brands Inc.. (Parnass, Steven) (Entered: 05/16/2008) |
| 05/16/2008 | 10 | DECLARATION of Joseph Aglione in Support of Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss, with exhibits (Defendants' Motion to Dismiss and supporting papers served on Plaintiff by FedEx on 5/2/08 - but not reflected on docket).. Document filed by Energy Brands Inc.. (Parnass, Steven) (Entered: 05/16/2008) |
| 05/16/2008 | 11 | MOTION to Dismiss *for Lack of Personal Jurisdiction*. Document filed by Spiritual Brands, Inc., Elicko Taieb.(Zarin, Scott) (Entered: 05/16/2008) |
| 05/16/2008 | 12 | FILING ERROR - DEFICIENT DOCKET ENTRY - MEMORANDUM OF LAW in Support re: 11 MOTION to Dismiss *for Lack of Personal Jurisdiction*.. Document filed by Spiritual Brands, Inc., Elicko Taieb. (Attachments: # 1 Exhibit Part 1, # 2 Exhibit Part 2, # 3 Exhibit Part 3, # 4 Exhibit Part 4, # 5 Exhibit Part 5, # 6 Exhibit Part 6)(Zarin, Scott) Modified on 5/19/2008 (jar). (Entered: 05/16/2008) |
| 05/19/2008 | | ***NOTE TO ATTORNEY TO RE-FILE DOCUMENT - DEFICIENT DOCKET ENTRY ERROR. Note to Attorney Scott Zarin to RE-FILE Document 12 Memorandum of Law in Support of Motion,. ERROR(S): Each supporting document must be filed individually. Event code for Declaration in Support found under Replies, Oppositions, Supporting Documents. (jar) (Entered: 05/19/2008) |
| 05/19/2008 | 13 | MEMORANDUM OF LAW in Support re: 11 MOTION to Dismiss *for Lack of Personal Jurisdiction*.. Document filed by Spiritual Brands, Inc., Elicko Taieb. (Zarin, Scott) (Entered: 05/19/2008) |
| 05/19/2008 | 14 | DECLARATION of Scott Zarin, Esq. in Support re: 11 MOTION to Dismiss *for Lack of Personal Jurisdiction*.. Document filed by Spiritual Brands, Inc., Elicko Taieb. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit)(Zarin, Scott) (Entered: 05/19/2008) |
| 07/16/2008 | 15 | OPINION # 96249 7/16/08 re: 11 MOTION to Dismiss *for Lack of Personal Jurisdiction* filed by Elicko Taieb, Spiritual Brands, Inc. Defendants' motion to dismiss for lack of personal jurisdiction is denied, and plaintiff's request for sanctions is denied as well. The parties shall proceed with discovery. All |

|  |  | discovery, both fact and expert, shall be completed by October 17, 2008. The Court will hold a pre-trial conference on October 17, 2008 at 10:00 a.m., in Courtroom 11A. (Signed by Judge Denny Chin on 7/16/08) (tro) Modified on 7/18/2008 (rw). (Entered: 07/17/2008) |
| 07/16/2008 |  | Set Deadlines/Hearings: Discovery due by 10/17/2008. Pretrial Conference set for 10/17/2008 at 10:00 AM in Courtroom 11A, 500 Pearl Street, New York, NY 10007 before Judge Denny Chin. (tro) (Entered: 07/17/2008) |

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 08/01/2008 16:48:49 | | |
| **PACER Login:** | dp0001 | **Client Code:** | 21951-1054 |
| **Description:** | Docket Report | **Search Criteria:** | 1:07-cv-10644-DC |
| **Billable Pages:** | 2 | **Cost:** | 0.16 |

# **EXHIBIT 6**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| ENERGY BRANDS INC. d/b/a GLACÉAU, | : | 07 Civ. 10644 (DC) |
| | : | |
| Plaintiff, | : | **CLERK'S CERTIFICATE** |
| | : | |
| v. | : | ECF Case |
| | : | |
| SPIRITUAL BRANDS, INC. and ELICKO TAIEB, | : | |
| | : | |
| Defendants. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

I, J. MICHAEL McMAHON, Clerk of the United States District Court for the Southern District of New York, do hereby certify that on November 28, 2007, Plaintiff filed the Complaint in this action against Defendants. The Complaint was served on defendant Taieb on December 3, 2007 (and again on December 19, 2007) and on defendant Spiritual Brands, Inc. on December 19, 2007. The December 19, 2007 service on both Defendants was effected by serving the Complaint on Defendants' previous counsel pursuant to an agreement by such counsel to accept service on behalf of Defendants. Proof of service was filed on January 4, 2008 with respect to both Defendants.

On May 2, 2008, Defendants filed a Motion to Dismiss the Complaint. On May 16, 2008, Plaintiff opposed the Motion. On July 16, 2008, the Court denied Defendants' Motion to Dismiss. That decision was entered on July 17, 2008. Under Federal Rule of Civil Procedure 12(a)(4), Defendants' answer would have been due no later than July 31, 2008, which was ten days after notice of the Court's action.

I further certify that the docket entries indicate that Defendants have not filed an

answer to the Complaint.  The default of Defendants is hereby noted.

Dated:  August ___, 2008
        New York, New York

_____
**J. MICHAEL McMAHON**
Clerk of the Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| ENERGY BRANDS INC. d/b/a GLACÉAU, | : | 07 Civ. 10644 (DC) |
| | : | |
| Plaintiff, | : | **CLERK'S CERTIFICATE** |
| | : | |
| v. | : | ECF Case |
| | : | |
| SPIRITUAL BRANDS, INC. and ELICKO | : | |
| TAIEB, | : | |
| | : | |
| Defendants. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

I, J. MICHAEL McMAHON, Clerk of the United States District Court for the

Southern District of New York, do hereby certify that on November 28, 2007, Plaintiff

filed the Complaint in this action against Defendants.  The Complaint was served on

defendant Taieb on December 3, 2007 (and again on December 19, 2007) and on

defendant Spiritual Brands, Inc. on December 19, 2007.  The December 19, 2007 service

on both Defendants was effected by serving the Complaint on Defendants' previous

counsel pursuant to an agreement by such counsel to accept service on behalf of

Defendants.  Proof of service was filed on January 4, 2008 with respect to both

Defendants.

On May 2, 2008, Defendants filed a Motion to Dismiss the Complaint.  On May

16, 2008, Plaintiff opposed the Motion.  On July 16, 2008, the Court denied Defendants'

Motion to Dismiss.  That decision was entered on July 17, 2008.  Under Federal Rule of

Civil Procedure 12(a)(4), Defendants' answer would have been due no later than July 31,

2008, which was ten days after notice of the Court's action.

I further certify that the docket entries indicate that Defendants have not filed an answer to the Complaint.  The default of Defendants is hereby noted.

Dated: August ___, 2008
      New York, New York

_____
**J. MICHAEL McMAHON**
Clerk of the Court